Howard W. **BENEDICT**, Trustee in Bankruptcy of Lillian E. Hargrove, d/b/a Hargrove Typesetting Service, Petitioner-Appellant,

v.

Morris **LEBOWITZ**, Appellee.

No. 146, Docket 29018.

United States Court of Appeals Second Circuit.

Argued Jan. 4, 1965.

Decided May 27, 1965.

Charles Weingarten, Bridgeport, Conn. (Richard D. Zeisler, Bridgeport, Conn., on the brief), for appellant.

Ralph J. Lockwood, Bridgeport, Conn., for appellee.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

Lillian E. Hargrove, doing business as Hargrove Typesetting Service, was adjudicated a bankrupt in the United States District Court for the District of Connecticut. Morris Lebowitz, her creditor, filed a reclamation petition based on a chattel mortgage covering various items of typesetting equipment. Howard W. Benedict, the trustee in bankruptcy, opposed the reclamation petition on the ground that the financing statement, filed in order to protect the chattel mortgage, had not been signed by Lebowitz. Referee Trevethan granted the reclamation petition, and upon a petition for review, Judge Timbers confirmed the order below for the reasons advanced by the referee.

The facts are undisputed. Mrs. Hargrove and her husband signed and delivered to Lebowitz a chattel mortgage securing an indebtedness of $8000. Lebowitz prepared a financing statement, State of Connecticut Standard Form UCC–1 used in connection with Uniform Commercial Code filings, by typing in the appropriate boxes thereon his name and address and the names and addresses of the Hargroves. He also obtained the signatures of the Hargroves at the bottom of the financing statement. He did not add his own signature, however, because of a misinterpretation of the instructions printed at the top of Form UCC–1. Lebowitz then forwarded the chattel mortgage, the financing statement, and a filing fee, to the Secretary of State.

Conn.Gen.Stat. § 42a–9–402(1) (Uniform Commercial Code § 9–402(1)) provides:

> "A financing statement is sufficient if it *is signed by the debtor and the secured party,* gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. * * * A copy of the security agreement is sufficient as a financing statement if it contains the above information and *is signed by both parties.*" (Emphasis supplied.)

The parties to this appeal agree that the chattel mortgage could not serve in lieu of a financing statement because it had never been signed by Lebowitz. Moreover, as stated above, Lebowitz did not inscribe his name at the bottom of the financing statement itself. To paraphrase the opinion of Referee Trevethan, then, the narrow question presented by this appeal is whether, under the circumstances, the insertion of Lebowitz's name in the body of the financing statement constituted a "signing" by him within the meaning of § 42a–9–402(1).

We agree with Referee Trevethan that Lebowitz signed the financing statement in the manner required by law, and in doing so we adopt the reasoning of his careful and sensible opinion. Because this appears to be the first appellate case on point, however, we think it advisable to recapitulate the arguments by which the referee arrived at his result.

Referee Trevethan cited Conn.Gen. Stat. § 42a–1–201(39) (Uniform Commercial Code § 1–201(39)), which provides: "'Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing." With regard to the requirement that a symbol be affixed to the writing, the referee referred to the comment by the authors of the Uniform Commercial Code that the symbol "may be printed, stamped, or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead." As for the requirement that there be an intention to authenticate the writing, the referee stated that this simply meant an intention "to evidence or establish its genuineness."

Referee Trevethan held that "the act of Lebowitz's secretary in typing his name on the financing statement at his direction, coupled with his subsequent act of filing the statement, constituted Lebowitz's effort and indicated his intention to authenticate the statement, i. e., to establish it, so far as Lebowitz was concerned, as the genuine financing statement of the transaction." The referee noted that Lebowitz neglected to inscribe his signature at the bottom of the financing statement as well, only "because of his misunderstanding of the instructions" of Form UCC–1. The referee added that Lebowitz's "filing of the chattel mortgage * * * with the financing statement serves quite abundantly further to demonstrate that the financing statement was an honest, genuine statement of Lebowitz."

Referee Trevethan found support for his result in Conn.Gen.Stat. § 42a–1–102 (Uniform Commercial Code § 1–102), which provides: "This title shall be liberally construed and applied to promote its underlying purposes and policies * * * to simplify, clarify and modernize the law governing commercial transactions." The referee might also have cited Conn. Gen.Stat. § 42a–9–402 (5) (Uniform Commercial Code § 9–402 (5)), which provides: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading;" and for a recent interpretation of this provision, see In the Matter of Excel Stores, Inc., 341 F.2d 961 (2 Cir. 1965).

Affirmed.