# FRANKLIN CREDIT MANAGEMENT CORPORATION
## *v.* THOMAS J. NICHOLAS ET AL.
### (AC 22186)

Schaller, Flynn and West, Js.

Argued September 20—officially released December 3, 2002

*Matthew B. Woods*, with whom, on the brief, was *David F. Borrino*, for the appellant (substitute plaintiff).

*Lloyd L. Langhammer*, with whom, on the brief, was *Richard Pascal*, for the appellee (named defendant).

*Opinion*

WEST, J. In this mortgage foreclosure action, the substitute plaintiff, Mortgage Electronic Registration Systems, Inc.,[1] appeals from the judgment of the trial court rendered in favor of the defendant Thomas J. Nicholas.[2] The plaintiff claims that the court (1) lacked personal jurisdiction over the parties pursuant to General Statutes § 51-183b and (2) improperly rendered judgment in favor of the defendant on the ground that the debt previously had been discharged. We affirm the judgment of the trial court.

The court found the following facts. On January 27, 1989, the defendant and his then wife, Ellen C. Brown, mortgaged the premises at 214 Lantern Road, Ledyard, to New London Federal Savings and Loan Association, the plaintiff's predecessor in interest (bank). The note was in the amount of $206,000. Beginning in May, 1991,

---

[1] Since the execution of the subject note, the name or the identity of the holder has changed several times. Mortgage Electronic Registration Systems, Inc., is the plaintiff in interest on appeal. We refer in this opinion to Mortgage Electronic Registration Systems, Inc., as the plaintiff.

[2] Ellen C. Brown was a defendant in the trial court. She is not a party to this appeal. We refer in this opinion to Nicholas as the defendant.

the defendant and Brown defaulted on their monthly obligation under the note. In that year, the defendant and Brown separated, but the defendant continued to reside at the subject premises.[3]

In 1994, the bank failed and was taken over eventually by Resolution Trust Corporation (Resolution Trust). At the end of 1994, Brown filed a petition in bankruptcy, listing the subject note as a debt to be discharged. On April 14, 1995, Resolution Trust issued an Internal Revenue Service (IRS) form 1099-C (form 1099-C) to both Brown and the defendant, notifying them that it had discharged the debt under the note. The defendant reported the cancellation of the debt, as indicated on the form 1099-C, in his 1995 income tax returns and incurred tax consequences.

In December, 1995, Franklin Credit Management Corporation (Franklin Credit) purchased the note from Resolution Trust, as part of a bulk transfer. At the time, Resolution Trust apprised Franklin Credit that all of the relevant documents may not be in the loan files and expressly disclaimed all warranties and representations regarding the defendant's mortgage and note prior to their sale. In June, 1998, Franklin Credit commenced a mortgage foreclosure action against the defendant. In response, the defendant filed an answer, special defenses, a claim for setoff and multiple counterclaims, which Franklin Credit thereafter sought to strike. The court, *Parker*, *J.*, granted the motion to strike, except as it pertained to the defendant's special defense that the debt had been discharged and released pursuant to form 1099-C.

The matter was tried to the court, *Hon. D. Michael Hurley*, judge trial referee, on January 17 and 19, 2001. The court rendered its judgment in favor of the defen-

---

[3] The premises, where the defendant operates a bed and breakfast enterprise, are now owned by Lantern Hill Associates, LLC.

dant, concluding that the defendant's debt had been discharged. Franklin Credit filed a motion to set aside the judgment, which the court denied. Franklin Credit appealed. Additional facts will be set forth as necessary.

I

We first consider the plaintiff's claim that the court lacked personal jurisdiction over the parties to render its judgment because its decision was not issued within 120 days of the completion of trial in violation of § 51-183b. We disagree.

The following additional facts are necessary to our resolution of the plaintiff's claim. At the conclusion of evidence, the court directed the parties to submit simultaneous briefs by February 20, 2001. The parties filed their briefs as ordered. On April 11, 2001, the defendant submitted an unsolicited supplemental brief (unsolicited brief), which the court accepted without comment. Franklin Credit did not object to the defendant's unsolicited brief. The court rendered judgment in favor of the defendant on July 12, 2001. On July 23, 2001, Franklin Credit filed a motion to set aside the judgment and for a mistrial on the basis of the court's having failed to render its judgment within 120 days of February 20, 2001.[4] Furthermore, Franklin Credit argued that the court had not requested or ordered briefs subsequent to February 20, 2001, or requested an extension of the 120 day limit imposed by § 51-183b.[5] The court denied the motion to set aside the judgment.

After Franklin Credit appealed, it filed a motion for articulation; see Practice Book § 66-5; which the court

---

[4] Throughout its brief, the plaintiff represents that Franklin Credit filed the motion to set aside the judgment six days after the judgment was rendered. According to the court file, Franklin Credit's motion was filed on July 23, 2001. Whether the motion was filed six days after judgment was rendered or on July 23, 2001, is of no consequence in our decision.

[5] The plaintiff claims that the court rendered judgment 142 days after February 20, 2001.

denied. Franklin Credit filed a motion for review. See Practice Book § 66-6. This court granted the motion for review and ordered the trial court to articulate its decision to deny the motion to set aside. In its articulation, the court noted that it had accepted the defendant's unsolicited brief and that Franklin Credit had not objected to the brief, either in terms of its content or its effect on the timing of the decision. The court articulated that it had utilized the unsolicited brief, at least, in determining when its decision was due. The court cited several opinions from the appellate courts of this state in support of its conclusion that Franklin Credit had waived its right to object to a decision rendered within 120 days of April 11, 2001. See *Frank* v. *Streeter*, 192 Conn. 601, 604, 472 A.2d 1281 (1984); *Northeast Savings, F.A.* v. *Scherban*, 47 Conn. App. 225, 230–32, 702 A.2d 659 (1997), cert. denied, 244 Conn. 907, 714 A.2d 2 (1998); *Ippolito* v. *Ippolito*, 28 Conn. App. 745, 748–50, 612 A.2d 131, cert. denied, 224 Conn. 905, 615 A.2d 1047 (1992). We conclude that the court properly applied our case law in denying Franklin Credit's motion to set aside.

General Statutes § 51-183b provides in relevant part: "Any . . . judge trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than *one hundred and twenty days from the completion date of the trial* of such civil cause. The parties may waive the provisions of this section." (Emphasis added.)

"Section 51-183b applies to all civil causes, and unless the parties waive its provisions, a trial court must render its decision within 120 days of the completion of the trial, which ends with the filing of the briefs when requested." (Internal quotation marks omitted.) *Northeast Savings, F.A.* v. *Scherban*, supra, 47 Conn. App. 231. Courts have "held that briefing of the legal issues

[is] a component of the judicial gathering of the materials necessary to a well-reasoned decision. In related contexts, completion has been held to encompass the availability of all the elements directly or indirectly to be considered in the rendering of a decision." (Internal quotation marks omitted.) Id.

"Cases interpreting the statute have established that the defect in a late judgment is that it implicates the trial court's power to continue to exercise jurisdiction over the parties before it. . . . We have characterized a late judgment as voidable rather than as void . . . and have permitted the lateness of a judgment to be waived by the conduct or the consent of the parties. . . . Thus, if both parties simultaneously expressly consent to a late judgment, either before the judgment is [rendered], or immediately thereafter, the judgment is valid and binding upon both parties, despite its lateness. Express consent, however, is not required. If a late judgment has been rendered and the parties fail to object seasonably, consent may be implied. . . . Because consent may be implied from a failure to object seasonably after a delayed judgment has been rendered, these cases do not support the [notion] that § 51-183b invariably requires the *prior* consent of both parties in order to waive the time limits the statute imposes.

"These implied consent cases establish that an unwarranted delay in the issuance of a judgment does not automatically deprive a court of personal jurisdiction. Even after the expiration of the time period within which a judge has the power to render a valid, binding judgment, a court continues to have jurisdiction over the parties until and unless they object. It is for this reason that a late judgment is merely voidable, and not void." (Emphasis in original; internal quotation marks omitted.) *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 341–42, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002).

This court has recognized that waiver of the 120 day requirement need not be express and may be implied from a party's conduct. See *Hargrove* v. *Zoning Board of Appeals*, 64 Conn. App. 251, 254, 779 A.2d 856 (2001), citing *Building Supply Corp.* v. *Lawrence Brunoli, Inc.*, 40 Conn. App., 89, 96–97, 669 A.2d 620, cert. denied, 236 Conn. 920, 674 A.2d 1326 (1996). "Whether a waiver has occurred is a factual question, reviewable under the clearly erroneous standard." *Ridgefield* v. *Eppoliti Realty Co.*, supra, 71 Conn. App. 340. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *L & R Realty* v. *Connecticut National Bank*, 246 Conn. 1, 8–9, 715 A.2d 748 (1998).

The facts of this case are controlled by *Ippolito* v. *Ippolito*, supra, 28 Conn. App. 748–50. Here, as in *Ippolito*, one of the parties submitted an unsolicited brief subsequent to the time the court established for the submission of briefs after the close of evidence. In both cases, the opposing party did not object to the unsolicited brief or seek to strike the brief. Neither of the courts returned the briefs or asked the parties to agree to extend the time in which the decisions were to be rendered. In *Ippolito*, the failure of the opposing party to file an objection to the unsolicited brief constituted implied consent to extend the period of 120 days from the completion of evidence. Id., 750.

Here, we note that Franklin Credit not only failed to object to the filing of the unsolicited brief, but also failed to object when the court had not rendered a decision 120 days after the simultaneous briefs were due, i.e., February 20, 2001. Rather, it appears that Franklin Credit waited for the court's decision. When it received an unfavorable decision, Franklin Credit filed a

motion to set aside the judgment.[6] By failing to raise a seasonable objection to the unsolicited brief or to the passage of 120 days from February 20, 2001, prior to the time the court rendered its judgment, Franklin Credit by implication waived the time provision of § 51-183b. The court's finding was not clearly erroneous, and we, therefore, conclude that it properly denied the motion to set aside the judgment.

## II

We now turn to the plaintiff's claim that the court improperly (1) concluded that the defendant had proved his special defense that Resolution Trust had intended to discharge the debt by issuing a form 1099-C, (2) shifted the burden of persuasion[7] to Franklin Credit to prove that Resolution Trust did not intentionally cancel the debt, (3) determined that the form 1099-C was a signed writing and (4) denied foreclosure on general equitable grounds not pleaded by the defendant. We are not persuaded by the plaintiff's claims.

---

[6] Query whether Franklin Credit would have filed a motion to set aside if the judgment had been rendered in its favor.

[7] In its statement of the issues to this court, Franklin Credit claimed that the trial court had shifted the burden of proof to it to prove that Resolution Trust did not intend to discharge the debt. In its brief and at oral argument, however, the plaintiff did not claim that the court applied anything other than the fair preponderance of the evidence standard to the facts at issue.

"The concept of a burden of persuasion ordinarily applies to questions of fact, and ordinarily is expressed in one of three ways: (1) a preponderance of the evidence; (2) clear and convincing evidence; or (3) proof beyond a reasonable doubt. . . . The function of the burden of persuasion is to allocate the risk of error on certain factual determinations, and to indicate the relative social importance of the factual determination at issue." (Internal quotation marks omitted.) *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 720, 780 A.2d 1 (2001).

The ordinary civil standard of proof is the fair preponderance of the evidence standard. *Freeman* v. *Alamo Management Co.*, 221 Conn. 674, 678, 607 A.2d 370 (1992). "The burden of persuasion in an ordinary civil action is sustained if evidence induces in the mind of the trier a reasonable belief that it is more probable than otherwise that the fact in issue is true." (Internal quotation marks omitted.) *Lopinto* v. *Haines*, 185 Conn. 527, 533, 441 A.2d 151 (1981).

Mortgage foreclosure appeals are reviewed under an abuse of discretion standard. "A foreclosure action is an equitable proceeding. . . . The determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Rosenblit* v. *Williams*, 57 Conn. App. 788, 792, 750 A.2d 1131, cert. denied, 254 Conn. 906, 755 A.2d 882 (2000).

In a mortgage foreclosure action, "[t]o make out its prima facie case, [the foreclosing party] had to prove by a preponderance of the evidence that it was the owner of the note and mortgage and that [the mortgagee] had defaulted on the note." *Webster Bank* v. *Flanagan*, 51 Conn. App. 733, 750–51, 725 A.2d 975 (1999). "At common law, the only defenses to an action of this character would have been payment, *discharge, release* or satisfaction . . . or, if there had never been a valid lien." (Emphasis added; internal quotation marks omitted.) *Southbridge Associates, LLC* v. *Garofalo*, 53 Conn. App. 11, 15, 728 A.2d 1114, cert. denied, 249 Conn. 919, 733 A.2d 229 (1999).

Franklin Credit alleged, among other things, that it is the owner of the note and that the note was in default. In response, the defendant asserted the special defense that "[t]he debt subject of the lawsuit was discharged and released, including as evidenced by Form 1099 issued by [Franklin Credit's] predecessor to the right, title and interest in the debt instruments."

In their briefs to the trial court and to this court, the parties cite General Statutes § 42a-3-604 (a) and cases

interpreting it to support their positions as to the discharge and release of the note. The court relied on that statute, in part, when rendering its decision. General Statutes § 42a-3-604 (a) provides: "A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge, *or* (ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing." (Emphasis added.) Our review of the court's interpretation of the statute and the statute's applicability to the facts of this case is plenary. See *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 599 n.7, 717 A.2d 713 (1998).

## A

The plaintiff claims that the court improperly determined that the defendant had proven that Resolution Trust intentionally discharged the debt by sending him form 1099-C and required Franklin Credit to prove mistake. Although the plaintiff does not deny that the form 1099-C was sent to the defendant, it claims that the form was sent to the defendant in error and that Resolution Trust never intended to discharge the defendant's debt. We disagree that the defendant failed to prove that Resolution Trust intentionally discharged the debt or that the court improperly placed the onus of proving mistake on Franklin Credit.[8]

---

[8] Although we conclude that the defendant proved that Resolution Trust intended to discharge his debt, we do not imply that General Statutes § 42a-3-604 (a) (ii) required the defendant to prove that Resolution Trust intended to agree not to file an action or to otherwise renounce its rights against the defendant in a signed writing. We have not undertaken that statutory construction. Prior to the 1991 revision of article three of the Uniform Commercial Code, the discharge of a debt was codified in General Statutes (Rev. to 1991) § 42a-3-605. The relevant portion of the predecessor to § 42a-

The following facts are relevant to our resolution of the plaintiff's claim. Franklin Credit's postevidence brief to the trial court, as well as the plaintiff's brief to this court, took the position that only subsection (ii) of § 42a-3-604 (a) is applicable to the defendant's special defense.[9] At page eight of its trial brief, Franklin Credit stated: *"Only the provisions of [Uniform Commercial Code] § 3-604 (a) (ii) are relevant.* None of the means of canceling a debt listed in Uniform Commercial Code § 3-604 (a) (i) are applicable to this case. . . . Therefore, [the defendant] can only prevail on his special defense by proving the defense of discharge by an agreement not to sue or some other renunciation of rights by a party entitled to enforce the note in a separate, signed writing . . . ." (Emphasis added.)

Section 42a-3-604 (a) provides in relevant part: "A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument . . . (ii) by agreeing not

3-604 (a) (ii) provides: "or (b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged." General Statutes (Rev. to 1991) § 42a-3-605 (1). The language of § 42a-3-604 (a) is significantly different, i.e., "(ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing." For an interesting discussion of the statutory construction of §§ 3-604 and 3-605 of the Uniform Commercial Code, see *Firstier Bank, N.A. v. Triplett,* 242 Neb. 614, 623–24, 497 N.W.2d 339 (1993) (*Grant, J.,* dissenting) and (*Caporale, J.,* dissenting).

The majority of the cases cited by the plaintiff in support of its intent argument are factually distinct from the facts here because in those cases, the holder of the note had committed acts that brought the case under what is now § 42a-3-604 (a) (i). In a few instances, the holder of the note, often a financial institution, discovered its mistake and commenced an action in replevin. Furthermore, none of the cases is a Connecticut case, and, except in *Firstier Bank, N.A.,* the applicable Uniform Commercial Code provision was former § 3-605.

[9] The plaintiff correctly points out that the defendant did not allege the statute in its special defense, which is in disregard of Practice Book § 10-3 (a). The defendant does not disagree that General Statutes § 42a-3-604 (a) (ii) is the applicable statute.

to sue or otherwise renouncing rights against the party by a signed writing." The court determined that form 1099-C was a signed writing that discharged and released the defendant's debt to the plaintiff. In rendering its decision, the court cited *Guaranty Bank & Trust Co. v. Dowling*, 4 Conn. App. 376, 494 A.2d 1216, cert. denied, 197 Conn. 808, 499 A.2d 58 (1985). We first note that the facts of *Dowling* are substantially different from the facts before us. In that case, the language of the statutory provision at issue was similar to § 42a-3-604 (a) (i).[10] The question was whether the bank intended to cancel the debt when it mistakenly sent a note marked paid in full to the debtor. There was no question that there had been a mistake because the debtor himself actually brought certain facts to the bank's attention. Later, when the bank attempted to collect the remainder of the debt, the debtor attempted to use the canceled note as a defense.

The court reasoned that "[t]he cancellation of a negotiable instrument generally has no effect when it is made by mistake. . . . Mistake is not readily susceptible of general definition. To the extent that a comprehensive definition of the term can be fashioned, it has been said that it signifies an erroneous mental conception which influences a person to act or to omit to act . . . ." (Citations omitted; internal quotation marks omitted.) Id., 379–80. Whether Resolution Trust sent the defendant form 1099-C on the basis of such an erroneous conception is a question of mental state or intent. A

---

[10] The predecessor to General Statutes § 42a-3-604 was General Statutes (Rev. to 1991) § 42a-3-605, which provides in relevant part: "(1) The holder of an instrument may even without consideration discharge any party (a) in any manner apparent on the face of the instrument or the endorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or (b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged."

creditor's intent to cancel a debt is an issue of fact to be determined by the trier of fact. Id., 380.

To prove his special defense of discharge and release, the defendant placed into evidence form 1099-C. The plaintiff claims that this was insufficient to prove that Resolution Trust intended to discharge the debt and, furthermore, that the court improperly shifted the burden of persuasion to Franklin Credit to rebut the presumption of the validity of the form 1099-C. The court concluded, however, that once the defendant put form 1099-C into evidence, it was prima facie evidence of Resolution Trust's intent to discharge. See *First State Bank of Bryson* v. *Johnson*, 585 S.W.2d 917, 919 (Tex. App. 1979) ("Uncontradicted, a receipt establishes facts therein stated as a matter of law. . . . A note introduced by a plaintiff in a suit thereon makes a prima facie case. A release for such note then being introduced makes a prima facie rebuttal. Plaintiff had the burden to go forward with rebuttal of such release." [Citation omitted.]).

"[T]he term prima facie case has been utilized, according to [one commentator on the law of evidence] . . . where the proponent, having the burden of proving the issue . . . has not only removed by sufficient evidence the duty of producing evidence to get past the judge to the jury, but has gone further, and, either by means of a presumption or by a general mass of strong evidence, has *entitled* himself to a ruling that the opponent should fail if he does nothing more in the way of producing evidence." (Emphasis in original; internal quotation marks omitted.) *Berchtold* v. *Maggi*, 191 Conn. 266, 270–71, 464 A.2d 1 (1983). The court found that after the defendant had put form 1099-C into evidence, Franklin Credit presented no evidence that the form was intended to discharge Brown's debt alone. Franklin Credit presented no evidence of the practices

and procedures of Resolution Trust or whether a mistake had occurred or how the mistake had occurred.

We therefore conclude that the court properly determined that, in the absence of any evidence to support the claim of mistake, the defendant had proven that the note was discharged, and that the court did not improperly shift the burden of persuasion to Franklin Credit to prove mistake.

B

The plaintiff also claims that the court, citing *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cole*, 189 Conn. 518, 532, 457 A.2d 656 (1983) (letterhead or billhead satisfies signature requirement), improperly found that form 1099-C satisfied the writing requirement of § 42a-3-604 (a) (ii). The court stated that form 1099-C contains the names of the defendant and Brown, the amount of the debt that was discharged and Resolution Trust's name, address and federal identification number. We agree that the contents of form 1099-C, as found by the court, constitute a signed writing and meet the requirements of § 42a-3-604 (a) (ii).

Our statutes define the term "signed" in accordance with the Uniform Commercial Code. " 'Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing." General Statutes § 42a-1-201 (39).[11] Our conclusion that form 1099-C is a signed writing is consistent with the official comment of the Uniform Commercial Code. "The inclusion of authentication in the definition of 'signed' is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and

---

[11] In construing General Statutes § 42a-1-201, we note that intent refers to the act of authenticating the writing.

in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use *common sense* and *commercial experience* in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing." (Emphasis added.) American Law Institute, Uniform Commercial Code (2002) § 1-201, official comment (39). Common sense and commercial experience were the keys in the court's analysis of the authentication of the form 1099-C at issue here.

As the court recognized, under federal law,[12] a financial institution such as Resolution Trust must send a copy of form 1099-C to a debtor when it discharges a debt. The form 1099-C informs the debtor of the amount of the debt that has been discharged and that the debtor must generally report the discharged amount as income on his federal income tax return. The form 1099-C contains a box that, when marked, indicates that the creditor has made corrections to the form. Implicit in the instructions on the form is the threat of monetary fines and penalties if the debtor chooses not to declare the discharged debt as income to the IRS.

This court takes judicial notice of the fact that form 1099-C is preprinted so that a financial institution merely needs to supply the relevant information. The form is used in the ordinary course of business to inform debtors of the cancellation of debt. Form 1099-C, therefore, was prima facie evidence that the debt had been discharged.

Furthermore, that conclusion is consistent with the weight of authority as to intention to sign. The United States Court of Appeals for the Second Circuit upheld a bankruptcy referee's construction of the term "signed" under § 42a-1-201 (39) in *Benedict* v. *Lebowitz*, 346 F.2d

---

[12] See 26 U.S.C. § 6050P.

120 (2d Cir. 1965). In *Benedict*, the petitioner in bankruptcy and her husband had signed a chattel mortgage in favor of the defendant, who "prepared a financing statement, State of Connecticut Standard Form UCC-1 used in connection with Uniform Commercial Code filings, by typing in the appropriate boxes thereon his name and address and the names and addresses of the [debtors]. He also obtained the signatures of the [debtors] at the bottom of the financing statement. He did not add his own signature, however, because of a misinterpretation of the instructions printed at the top of Form UCC-1. [The defendant] then forwarded the chattel mortgage, the financing statement, and a filing fee, to the Secretary of State." Id., 121. The plaintiff bankruptcy trustee opposed the defendant's reclamation petition because form UCC-1 was not signed.

The Second Circuit quoted from the referee's decision, which had granted the reclamation petition and thereafter was confirmed by the United States District Court for the District of Connecticut. Id., 122. The referee "held that the act of [the defendant's] secretary in typing his name on the financing statement at his direction, coupled with his subsequent act of filing the statement, constituted [the defendant's] effort and indicated his intention to authenticate the statement, i.e., to establish it, so far as [the defendant] was concerned, as the genuine financing statement of the transaction. The referee noted that [the defendant] neglected to inscribe his signature at the bottom of the financing statement as well, only because of his misunderstanding of the instructions of Form UCC-1. The referee added that [the defendant's] filing of the chattel mortgage . . . with the financing statement serves quite abundantly further to demonstrate that the financing statement was an honest, genuine statement of [the defendant]." (Internal quotation marks omitted.) Id.

In the case before this court, the plaintiff does not deny that the form 1099-C was sent to the defendant. It claims, however, that the defendant has not proved that form 1099-C was a signed writing. In keeping with the holding of *Benedict* v. *Lebowitz,* supra, 346 F.2d 120, Resolution Trust's completion of form 1099-C and sending it to the defendant was sufficient to authenticate the document. See also *In the Matter of Steven Horvath,* 37 Conn. B. J. 578, 579 (1963) ("There was no direct evidence that [the creditor] intended its typed name to constitute its authentication or its evidencing of the genuineness of the statement. But, from all that has been before the court on this matter, it is clear that the bankrupt and [the creditor] did enter into a bona fide trust receipts financing arrangement; that the bankrupt signed the financing statement which bears the typed name of [the creditor] in the blank provided for the signature of the secured party; that the financing statement was filed with the Secretary of State to give notice of the asserted security interest of [the creditor]. From all this, common sense compels the conclusion that the typed name of [the creditor] on the statement could have been intended for no other purpose than to reflect a showing by [the creditor] that the statement was genuine and was to evidence a bona fide security interest obtained by it. Thus, that typed name constituted a sufficient signing to meet the loose, relaxed requirement of the Code.").

The referee in *Benedict* also found support for his position in General Statutes § 42a-1-102, which provides in relevant part that "[t]his title shall be liberally construed and applied to promote its underlying purposes and policies . . . to simplify, clarify and modernize the law governing commercial transactions." (Internal quotation marks omitted.) *Benedict* v. *Lebowitz,* supra, 346 F.2d 122.

We therefore conclude that the court properly determined that form 1099-C was a signed writing discharging the defendant's debt.

C

The plaintiff's final claim is that the court improperly determined that foreclosure should be denied on equitable grounds not pleaded by the defendant. We disagree.

As we set out at the beginning of part II, a mortgage foreclosure action is an equitable proceeding. What equity requires is a matter of discretion for the court. *Rosenblit* v. *Williams*, supra, 57 Conn. App. 792. "[T]he court may entertain such questions as are necessary to be determined in order that complete justice may be done. *Hartford Federal Savings & Loan Assn.* v. *Lenczyk*, 153 Conn. 457, 463, 217 A.2d 694 (1966). In a foreclosure proceeding, the trial court may examine all relevant factors to ensure that complete justice is done." (Internal quotation marks omitted.) *Amresco New England II, L.P.* v. *Colossale*, 63 Conn. App. 49, 55, 774 A.2d 1083 (2001).

In this case, the court examined the relevant factors and determined that foreclosure would be inequitable, particularly due to the consequences the defendant incurred as a result of form 1099-C. As we stated in part II B, the court found that under federal law, a financial institution such as Resolution Trust must send form 1099-C to a debtor when it discharges a debt. The instructions on form 1099-C imply the threat of a monetary fine and other penalties if the debtor elects not to declare the discharged debt as income to the IRS. In this instance, neither Resolution Trust nor the plaintiff has issued an amended form 1099-C to the defendant permitting him to file an amended tax return to avoid the tax consequences he incurred when he filed his 1995 tax returns. The court concluded that it would be inequitable for the defendant to incur tax

consequences as a result of the form 1099-C and to permit the plaintiff to continue to hold him liable for the debt. We agree.

Finally, the court concluded that because the defendant's debt had been discharged, Franklin Credit was forbidden to foreclose on the premises. "A note and a mortgage given to secure it are separate instruments, executed for different purposes and in this State action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit." (Internal quotation marks omitted.) *Hartford National Bank & Trust Co.* v. *Kotkin,* 185 Conn. 579, 581, 441 A.2d 593 (1981). In response to Franklin Credit's complaint, the defendant alleged the special defense of discharge and release. The defendant proved his special defense with the unrebutted form 1099-C. "It is hornbook law that the mortgage follows the note. . . . The mortgage cannot survive the extinction of the debt." (Citation omitted; internal quotation marks omitted.) *Amresco New England II, L.P.* v. *Colossale,* supra, 63 Conn. App. 55–56. For those reasons, the court properly denied foreclosure on equitable grounds.

The judgment is affirmed.

In this opinion the other judges concurred.

