Gary RYDER, Plaintiff,

v.

WASHINGTON MUTUAL BANK,
F.A., Defendant.

No. 3:04CV00973(DJS).

United States District Court,
D. Connecticut.

Aug. 14, 2007.

Gary Ryder, Greenwich, CT, pro se.

William E. Murray, Donald E. Frechette, Edwards & Angell, Hartford, CT, for Defendant.

### MEMORANDUM OF DECISION AND ORDER

SQUATRITO, District Judge.

The Plaintiff, Gary Ryder ("Ryder"), brings this action against the Defendant, Washington Mutual Bank, F.A. ("the Bank"), based upon the alleged breach of a loan contract and Connecticut's Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. §§ 42–110a *et seq.*[1] In response to Ryder's Complaint, the Bank filed a counterclaim against Ryder, seeking the strict foreclosure of property, located at 345 Round Hill Road, Greenwich, Connecticut ("the Property"), which apparently was purchased with the proceeds of the loan contract referred to in Ryder's Complaint. The Bank thereafter moved to join as counter defendants certain individuals and entities with potential interests in the Property.[2] Now pending before the court are the Bank's Renewed Motion for Partial Summary Judgment on its Counterclaim **(dkt.# 153)** and Motion for Summary Judgment with Respect to Plaintiff's Complaint **(dkt.# 154)**. For the reasons stated herein, the Bank's Renewed Motion for Partial Summary Judgment on its Counterclaim **(dkt.# 153) is GRANTED,** and the Bank's Motion for Summary Judgment with Respect to Plaintiff's Complaint **(dkt.# 154) is DENIED.**

### I. RYDER'S SUBMISSIONS

Before setting forth the background facts of this case, the court notes that Ryder has failed to comply with Rule 56 of the Local Rules of Civil Procedure for the District of Connecticut ("D.Conn.L.Civ. R."). Specifically, Ryder did not file a "Local Rule 56(a)(2) Statement" with his opposition memorandum.[3] *(See* dkt. # 177.) Under Local Rule 56(a)(2), "[t]he papers opposing a motion for summary judgment shall include a document entitled

---

1. Ryder's Complaint also set forth claims based upon the Fair Credit Reporting Act and defamation. The court dismissed these two claims pursuant to Fed.R.Civ.P. 12(b)(6). *(See* dkt. # 25.)

2. Of the counter defendants, only Christine Wolf and Tuthill Finance, L.P. have not had default judgments entered against them or been dismissed from the case.

3. The court points out that, pursuant to Local Rule 56(b), the Bank sent to Ryder its "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" *(see* dkt. # 164), which set forth Ryder's obligations in opposing summary judgment.

'Local Rule 56(a)2 Statement,' which states in separately numbered paragraphs ... corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is admitted or denied." D. Conn. L. Civ. R. 56(a)(2). "All material facts set forth in [the moving party's Local Rule 56(a)1] [S]tatement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2." D. Conn. L. Civ. R. 56(a)(1). Although Ryder has filed a document that the court considers to be an opposition memorandum *(see* dkt. # 177), he has not filed a Local Rule 56(a)(2) Statement in response to the Bank's Local Rule 56(a)(1) Statements.

■ Rule 56 of the Federal Rules of Civil Procedure "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002). The District of Connecticut has set forth rules that are meant to assist the court when reviewing summary judgment motions. "The purpose of [Local] Rule 56 is to aid the court, by directing it to the material facts that the movant claims are undisputed and that the party opposing the motion claims are disputed." *Coger v. Connecticut,* 309 F.Supp.2d 274, 277 (D.Conn.2004). "Absent such a rule, 'the court is left to dig through a voluminous record, searching for material issues of fact without the aid of the parties.'" *S.E.C. v. Global Telecom Servs., L.L.C.,* 325 F.Supp.2d 94, 108 (D.Conn.2004) (quoting *N.S. v. Stratford Bd. of Educ.,* 97 F.Supp.2d 224, 227 (D.Conn.2000)). "The Local Rules provide clear notice that 'failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including ... when the opponent fails to comply, an

order granting the motion.'" *Id.* at 108–09 (quoting D. Conn. L. Civ. R. 56(a)(3)).

■ The court is well aware, however, that "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest." Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (emphasis in original) (internal quotation marks omitted). "This policy of liberally construing *pro se* submissions is driven by the understanding that [i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* at 475 (internal quotation marks omitted). On the other hand, *"pro se* parties are not excused from abiding by the Federal Rules of Civil Procedure." *Collins v. Experian Credit Reporting Serv.,* No. 3:04CV1905(MRK), 2006 WL 2850411, at *1 (D.Conn. Oct.3, 2006); *see McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *LoSacco v. City of Middletown,* 71 F.3d 88, 92 (2d Cir.1995) (holding that pro se litigants "generally are required to inform themselves regarding procedural rules and to comply with them.... This is especially true in civil litigation.") (internal citations and quotation marks omitted).

■ Although Ryder's failure to comply with the Local Rules could, by itself, result in the court granting summary judgment in favor of the Bank, the court shall nevertheless consider Ryder's memorandum opposing summary judgment, which does not contain any legal analyses, but rather factual assertions. In deference to Ryder's *pro se* status, the court, to the extent possible, will regard Ryder's version of the facts contained in his opposition (excluding arguments or conclusory statements) as responsive to the Bank's Local Rule

56(a)(1) Statements. For the purposes of this motion, however, the court shall deem admitted all facts set forth in the Bank's compliant Local Rule 56(a)(1) Statements that are supported by the evidence [4] and not refuted by Ryder's opposition memorandum.

## II. FACTS

On January 17, 2003, Ryder and the Bank executed an adjustable-rate note ("the Note"), whereby Ryder promised to pay the Bank the amount of $2,450,000.00, plus interest at a yearly rate of 4.566% up until the first day of the calendar month that immediately preceded the first payment due on March 1, 2003. Thereafter, Ryder was to pay interest at a yearly rate of 3.450%. The interest rate could further change, however, on a "change date," which was March 1, 2003, and on the first of each month thereafter. The amount of Ryder's monthly payments until that first "change date" was $10,933.00 for principal and interest. The Note was to be paid in full by February 1, 2033. To secure his obligations under the Note, Ryder, on January 17, 2003, executed an open-end mortgage deed ("the Mortgage") in favor of the Bank.

In his Complaint, Ryder alleges that he properly and timely tendered his payments due under the Note. According to Ryder, the Bank failed to process several of his payments in a timely manner, returned properly tendered payments, and charged late fees for timely payments. Ryder further asserts that the Bank promised to remedy its conduct by deleting the allegedly incorrect late fees, but failed to do so.

In addition, Ryder maintains that, in December 2003, the Bank demanded changes to the payment schedule. Ryder states that, in an attempt to accommodate the Bank, he created and funded a separate account from which the Bank promised to draw specific amounts at specific times; however, Ryder asserts that the Bank failed to adhere to this alternative method of payment by attempting to draw a greater amount of funds than agreed upon, which resulted in non-payment by Ryder. According to Ryder, although the Bank acknowledged in February 2004 that it had "mishandled" its obligations under the note and assured Ryder that the late fees would be removed from subsequent billing statements, the Bank never corrected its errors, forcing Ryder to make excessive payments and incur costs and expenses that he would not have otherwise incurred. Therefore, Ryder claims that, as a result of the Bank's alleged breach of contract and violation of CUTPA, he is entitled to: general and economic damages in an amount greater than $500,000.00; punitive damages; injunctive relief; and costs and attorney's fees.

The Bank denies all of Ryder's assertions. According to the Bank, it accelerated the amounts due under the Note because Ryder had failed to pay his monthly payments and late charges when those amounts became due. The Bank also asserts that Ryder did not pay property

---

4. The court is aware that "in determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's [Local] Rule 56[ ] statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir. 2004); *see Giannullo v. City of New York,* 322 F.3d 139, 143 n. 5 (2d Cir.2003) (stating that, "although [Local] Rule 56[ ] is designed to streamline the district court's consideration of summary judgment motions," not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

taxes on the Property for the taxes due and payable on July 1, 2004, January 1, 2005, and July 1, 2005, and that the Town of Greenwich filed a lien against the Property in the amount of $20,238.40 on June 17, 2005.

The Bank states that, in a letter dated July 28, 2005, it notified Ryder that he was in default of the provisions of the Note and Mortgage, and informed him of how he could cure that default. The Bank maintains that Ryder never cured the default, thus forcing the Bank, on May 22, 2006, to pay the outstanding property taxes (including penalties, interest, and other fees) in order to protect its interest in the Property. The Bank represents that the total amount of the taxes it paid was $50,095.92. Thus, in its Amended Counterclaim, the Bank seeks: a strict foreclosure of the Mortgage as to the Property; immediate and exclusive possession of the Property; and an order of immediate ejectment against Ryder and/or any other person occupying the Property; a deficiency judgment against Ryder and anyone claiming any interest in the Property through him; and damages, costs, and attorney's fees.

During the course of this litigation, the parties reported to the court that they had entered into a settlement agreement ("the Settlement"). Ryder signed the Settlement on January 19, 2007, and the Bank's representative signed the Settlement on the same date. Under the terms of the Settlement: (1) the Bank was to be immediately released from liability on the claims in Ryder's Complaint; (2) Ryder was to pay a sum certain to the Bank in satisfaction of the Note on or before January 31, 2007; and (3) upon Ryder's payment of that amount, the Bank would release Ryder from liability on the claims in the Amended Counterclaim.[5] The Bank claims, and Ryder does not dispute, that

Ryder did not make the payment as set forth in the Settlement.

## III. DISCUSSION

Ryder alleges that the Bank breached their contract and violated CUTPA by failing to properly process his monthly payments due under the Note. The Bank denies any wrongdoing and has counterclaimed. The Bank alleges that Ryder violated the terms of the Note, and seeks a strict foreclosure of the Mortgage on the Property.

There are two pending motions for summary judgment, both filed by the Bank. In one motion, the Bank claims that it is entitled to partial summary judgment with regard to the strict foreclosure claim of the Amended Counterclaim because there are no genuine issues of material fact and the Bank is entitled to judgment as a matter of law. In the other motion, the Bank claims that it is entitled to summary judgment with regard to Ryder's Complaint because, pursuant to the terms of the Settlement, Ryder had executed a valid and binding release discharging the Bank from the claims asserted in the Complaint. The court shall address the Bank's arguments seriatim.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an

---

**5.** This is not an exhaustive list of all the terms and provisions contained in the Settlement.

essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)).

■ A dispute concerning a material fact is genuine " 'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

## B. MOTION FOR SUMMARY JUDGMENT ON THE AMENDED COUNTERCLAIM

■ In the Renewed Motion for Partial Summary Judgment on its Counterclaim (dkt.# 153), the Bank seeks a strict foreclosure based upon Ryder's liability for the property tax default on the Property. "In a mortgage foreclosure action, [t]o make out its prima facie case, [the foreclosing party] ha[s] to prove by a preponderance of the evidence that it [is] the owner of the note and mortgage and that [the mortgag-

ee] ... defaulted on the note." *Franklin Credit Mgmt. Corp. v. Nicholas*, 73 Conn. App. 830, 838, 812 A.2d 51 (2002) (internal quotation marks omitted). "At common law, the only defenses to an action of this character would have been payment, discharge, release or satisfaction ... or, if there had never been a valid lien." *Id.* (internal quotation marks omitted).

■ In this case, there is no dispute that the Bank is the owner of both the Note and Mortgage. The question, then, is whether Ryder has defaulted on the Note and Mortgage. Under the terms of the Mortgage, Ryder was to "pay all taxes, assessments, charges, fines, and impositions attributable to the Property...." (Dkt. # 153, Ex. C § 4.) Ryder was also to "promptly discharge any lien which has priority over [the Mortgage]." *(Id.)* If the Bank determined that the Property was subject to such a lien, it "may give [Ryder] a notice identifying the lien. Within 10 days of the date on which the notice is given, [Ryder] shall satisfy the lien...." *(Id.)*

In his responses to the Bank's requests for admissions, Ryder admitted that: (1) he failed to pay the property taxes on the Property that were due and payable on July 1, 2004, January 1, 2005, and July 1, 2005; and (2) on or about June 17, 2005, the Town of Greenwich filed a tax lien against the Property in the amount of $20,238.40.[6] *(See id.*, Ex. B ¶¶ 133–37.) Thus, it is clear to the court that Ryder, by admittedly failing to pay these property taxes and incurring a lien on the Property, defaulted under the terms of Note and

---

**6.** It appears that the June 17, 2005 tax lien against the Property resulted from Ryder's failure to pay the taxes due on July 1, 2004 and January 1, 2005, not from Ryder's failure to pay the taxes due on July 1, 2005. In the court's view, a tax lien filed on June 17, 2005 could not have resulted from a failure to pay property taxes that were not yet due. Never-

theless, this does not affect the court's decision here because Ryder admitted that he failed to pay the all the above-mentioned property taxes (including the property taxes due on July 1, 2004 and January 1, 2005), and that the Town of Greenwich subsequently filed a tax lien against the Property.

Mortgage. Therefore, the court concludes that the Bank has satisfied the *prima facie* elements for a foreclosure action.

It is Ryder's burden to rebut the Bank's *prima facie* case for foreclosure. Ryder has not done so here. In his opposition memorandum, Ryder did not address the Bank's foreclosure claim in any way, nor did he submit any affidavits or evidence that would support a rebuttal of the Bank's *prima facie* case.[7] That is, Ryder has not presented the court with anything indicating that there is a genuine issue of material fact with regard to this claim in the Bank's Amended Counterclaim. Therefore, because the court has concluded that the Bank has established a *prima facie* foreclosure case, which Ryder has not rebutted, the Bank's Renewed Motion for Partial Summary Judgment on its Counterclaim (**dkt.# 153**) is **GRANTED.**

### C. MOTION FOR SUMMARY JUDGMENT ON THE COMPLAINT

In the Bank's Motion for Summary Judgment with Respect to Plaintiff's Complaint, the Bank asserts that it is entitled to summary judgment because Ryder and the Bank entered into the Settlement pursuant to which Ryder released the Bank from the claims in the Complaint. For the reasons that follow, the court disagrees with the Bank's argument, and the Bank's motion is **DENIED.**

■ Under the terms of the Settlement itself, the validity, effect and operation of the Settlement is to be determined by the substantive laws of the State of Connecticut. Connecticut courts are "guided by the well established principle that [a] judgment rendered in accordance with ... a stipulation of the parties is to be regarded and construed as a contract." *HLO Land Ownership Assocs. Ltd. P'ship v. City of Hartford,* 248 Conn. 350, 356, 727 A.2d 1260 (1999) (internal quotation marks omitted); *see Omega Eng'g, Inc. v. Omega, S.A.,* 432 F.3d 437, 443 (2d Cir.2005) ("A settlement agreement is a contract that is interpreted according to general principles of contract law.") (applying Connecticut law); *Johnson v. Schmitz,* 237 F.Supp.2d 183, 189 (D.Conn.2002) ("A settlement agreement pursuant to which parties agree to discontinue litigation constitutes a contract that, once entered, is both binding and conclusive.").

■ The question, then, is whether the Settlement has any remaining effect. This question is answered by how the Settlement, as a contract, is classified. "Satisfaction of a claim may be found in either the promise to settle or the full performance of that promise. Connecticut law comports with the view that the intention of the parties is determinative of whether a settlement agreement constitutes an executory accord or a substitute agreement."[8] *Air–Care N.O. Nelson Co. v. Patchet,* 5 Conn.App. 203, 205, 497 A.2d 771 (1985).

■ "[A]n essential element of any novation [or substitute contract] is the ex-

---

7. The court points out that Ryder submitted no affidavits or evidence at all to support his opposition memorandum.

8. The court notes that a "substitute agreement" (or "substitute contract") may also be known as a "novation." " '[N]ovation,' [is the] term ... usually used with reference to instances in which a new party is introduced into the new contract, while 'substitute contract' is the designation commonly employed to cover agreements between the same parties which supersede and discharge prior contract obligations.... There is, however, no distinction so far as concerns the legal effect." *Riverside Coal Co. v. Am. Coal Co.,* 107 Conn. 40, 44–45, 139 A. 276 (1927). Because the legal effect of a "substitute contract" and a "novation" are the same, for the purposes of this analysis, the court shall use these terms interchangeably.

tinguishing of the original contract by substitution of a new one." *Flagg Energy Dev. Corp. v. General Motors Corp.*, 244 Conn. 126, 145, 709 A.2d 1075 (1998). "A recognized test for whether a later agreement between the same parties to an earlier contract constitutes a substitute contract looks to the terms of the second contract. If it contains 'terms inconsistent with the former contract, so that the two cannot stand together' it its characteristics . . . indicating a substitute contract." *Bushnell Plaza Dev. Corp. v. Fazzano*, 38 Conn.Supp. 683, 688, 460 A.2d 1311 (1983) (quoting *Riverside Coal Co.*, 107 Conn. at 45, 139 A. 276).

 With regard to accords, "[w]hen there is a good faith dispute about the existence of a debt or about the amount that is owed, the common law authorizes the debtor and the creditor to negotiate a contract of accord to settle the outstanding claim." *Herbert S. Newman and Partners, P.C. v. CFC Const. Ltd. P'ship*, 236 Conn. 750, 764, 674 A.2d 1313 (1996) (internal quotation marks omitted). "An accord is a contract between creditor and debtor for the settlement of a claim by some performance other than that which is due." *Id.* (internal quotation marks omitted); *see B & B Bail Bonds Agency of Conn., Inc. v. Bailey*, 256 Conn. 209, 213, 770 A.2d 960 (2001) (" 'Accord and satisfaction' is a method of discharging a claim whereby the parties agree to give and accept something other than that which is due in settlement of the claim and to perform the agreement.") (internal quotation marks omitted).

It is undisputed that the Settlement was not fully performed because Ryder did not make payment as required under the terms of the Settlement. Therefore, the distinction between substitute contract and executory accords is important here because that distinction determines the manner in which the parties may seek relief.

The court must look at whether the Settlement *"itself* constituted satisfaction of the original cause of action, or whether the performance of the agreement was intended to be the satisfaction." *Air–Care N.O. Nelson Co.*, 5 Conn.App. at 205, 497 A.2d 771 (emphasis in original); *see Tolland Enters. v. Scan–Code, Inc.*, 239 Conn. 326, 333 n. 9, 684 A.2d 1150 (1996) ("Because the obligor's original duty is not satisfied until the accord is performed, an accord differs from a substituted contract, under which a promise of substituted performance is accepted in satisfaction of the original duty.").

 If the Settlement constitutes a substitute contract, the Bank's original contract with Ryder would be extinguished because the Settlement itself would be satisfaction of the Bank's original cause of action (i.e., the obligations forming the underlying bases for the Bank's Amended Counterclaim would no longer be in effect). In such a situation, the Bank could no longer proceed with its original cause of action, but would have to seek its remedies pursuant to the Settlement. If, however, the Settlement constitutes an accord and satisfaction, only the performance of the Settlement would extinguish the parties' original obligations. *See Tolland Enters.*, 239 Conn. at 333, 684 A.2d 1150 ("Performance of the accord discharges the original duty."). "[I]f there is a breach of the accord by the obligor, the obligee has the option of either seeking enforcement of the original duty or seeking enforcement of any obligation under the accord." *Id.; see Air–Care N.O. Nelson Co.*, 5 Conn.App. at 206, 497 A.2d 771 ("In the event that the parties intended that performance of the new agreement was to be the satisfaction of the claim, there can be no doubt that the creditor may, on default in performance of the accord by the debtor, sue either on the original cause of action, or, it

would seem, if he prefers to do so, on the contract of accord.") (internal quotation marks omitted).

█ The court finds that, based upon the representations, submissions, and conduct of the parties, the Settlement constitutes an accord and satisfaction, not a substitute contract. Both parties signed the Settlement. On January 30, 2007, after both the Bank and Ryder reported to the court that the case had settled, the court, pursuant to Fed.R.Civ.P. 41(a)(2) dismissed the case without prejudice to either party moving to reopen the case on or before March 1, 2007. *(See* dkt. # 146.) According to the Bank, the Settlement immediately released the Bank from liability on Ryder's Complaint. Ryder, however, breached the terms of the Settlement. In response to Ryder's breach, the Bank moved to reopen this case. *(See* dkt. # 148.) Ryder did not object to the Bank's motion to reopen. Thus, the court granted the motion to reopen, and this case was reactivated. If the Settlement had constituted a substitute contract, the Bank would have had to seek the remedies afforded by the substitute contract by way of a new and separate cause of action. The Bank's motion to reopen this case, and Ryder's acquiescence to that motion, indicate that the parties did not intend the Settlement to be a substitute contract. Thus, the Settlement constitutes an accord and satisfaction.

█ In its summary judgment motions, the Bank seeks to enforce both a portion of Ryder's original duties under the Note and Mortgage *(see* dkt. # 153) and a portion Ryder's obligations under the Settlement *(see* dkt. # 154). The court finds this to be impermissible under Connecticut law. Upon Ryder's breach of the Settlement, the Bank had the option of either seeking enforcement of Ryder's original duties or seeking enforcement of any obligation under the accord and satisfaction.

*See Tolland Enters.,* 239 Conn. at 333, 684 A.2d 1150; *Air–Care N.O. Nelson Co.,* 5 Conn.App. at 206, 497 A.2d 771. In the court's estimation, the Bank, by moving to reopen this case; seeking default judgments on various counter defendants; and requesting summary judgment on its Amended Counterclaim, has opted to enforce Ryder's original duties and does not seek enforcement of the Settlement.

The Bank could have moved to enforce the Settlement, for "[a] trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are 'clear and unambiguous.'" *Omega Eng'g, Inc.,* 432 F.3d at 444 (quoting *Audubon Parking Assocs. Ltd. P'ship v. Barclay & Stubbs, Inc.,* 225 Conn. 804, 811, 626 A.2d 729 (1993)). Yet, the Bank did not do so. Instead, the Bank attempts, through the summary judgment process, to foreclose on its Amended Counterclaim and seek protection under the Settlement. As the court reads Connecticut law, the Bank could do one or the other, but not both. Therefore, the court finds that, although Ryder has breached the Settlement, the Bank chose to proceed on its Amended Counterclaim, thus precluding it from obtaining relief on the Settlement. Consequently, the Bank's Motion for Summary Judgment with Respect to Plaintiff's Complaint **(dkt.# 154)** is **DENIED.**

## CONCLUSION

For the foregoing reasons, Washington Mutual Bank, F.A.'s Renewed Motion for Partial Summary Judgment on its Counterclaim **(dkt.# 153) is GRANTED.** With respect to Gary Ryder's foreclosure liability for defaulting on property taxes, judgment in favor of Washington Mutual Bank, F.A. shall enter on Count One of the Amended Counterclaim.

The court has found that, although the parties' Settlement Agreement constitutes an accord and satisfaction, Washington Mutual Bank, F.A. is no longer entitled to the remedies afforded by that Settlement Agreement. Instead, the parties must proceed on Ryder's original cause of action. Therefore, Washington Mutual Bank, F.A.'s Motion for Summary Judgment with Respect to Plaintiff's Complaint (dkt.# 154) is **DENIED**.

**SO ORDERED.**