******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# DAVID PANICCIA *v.* SUCCESS VILLAGE APARTMENTS, INC., ET AL.
## (AC 44322)

Prescott, Suarez and Bishop, Js.

*Syllabus*

The plaintiff, P, sought to recover damages from the defendant, S Co., for S Co.'s breach of the parties' employment contract in connection with S Co.'s termination of P's employment. P was hired by S Co. in 2012, pursuant to an employment contract for a term of two years, and his contract was renewed in 2013 for an additional term of two years. In October, 2015, S Co. approved and executed a new employment contract with P for an additional term of two years, to begin on January 25, 2016. Although the 2015 contract was dated October 12, 2015, the board of S Co. approved the contract on October 13, 2015, at a special meeting. In December, 2015, S Co. notified P that his employment would be terminated as of January 25, 2016, the date his 2015 contract was to begin. Following a bench trial, the parties executed a joint stipulation providing for an extension of the statutory (§ 51-183b) 120 day deadline for the trial court to render a decision. The trial court issued its memorandum of decision past the agreed upon extended deadline, rendering judgment for S Co. P moved to open and vacate the judgment and for a new trial, which the trial court granted. A new bench trial was held, and the trial court rendered judgment for P. On S Co.'s appeal to this court, *held*:

1. The trial court properly granted P's motion to open and vacate the judgment rendered in the first trial as that court's finding that P did not waive his right to object to the untimely decision was not clearly erroneous: P was under no duty to speak or to protest after the court failed to issue a decision by the agreed upon deadline, prejudgment silence alone was not sufficient to support a finding of waiver under § 51-183b, as there must have been some other act or conduct that either delayed the start of the deadline, created a duty to protest in the silent party or served as an affirmative act of waiver or consent, and S Co. was unable to identify any such act or conduct by P that supported a finding of waiver; moreover, S Co.'s attempt to draw a distinction between a party's silence after the statutory 120 day deadline had passed and after an agreed upon extension of that deadline had passed was unpersuasive, as the same considerations applied in either situation.

2. S Co. could not prevail on its claim that the trial court violated the parol evidence rule by relying on the testimony of witnesses rather than the written employment contract in finding that the 2015 contract was executed on October 13, 2015, and was valid and enforceable; because a party may use extrinsic evidence to prove that a purported contract never came into existence, it followed that a party may do so to prove that a contract, in fact, existed, and, because the date on which the contract was approved and executed was not a negotiated term of the contract, the evidence admitted was not used to vary or contradict any terms of the contract.

3. S Co. could not prevail on its claim that the trial court improperly awarded prejudgment interest on P's award for back pay under the statutory (§ 37-3a) provision providing for an award of interest for the wrongful detention of money: S Co. breached the contract for the payment of wages by preventing P from performing fully under the contract, the damages awarded here were ascertainable at the time of S Co.'s breach pursuant to the terms of the 2015 contract, and, therefore, contrary to S Co.'s claim, the damages sought were not akin to damages in a personal injury action; moreover, although S Co. emphasized that P was not seeking liquidated damages under the contract and therefore § 37-3a did not apply, much like liquidated damages, the award for unpaid wages was determined by the terms of the contract governing the amount of P's salary, and the court awarded interest on P's weekly salary as each payment would have become due under the terms of the 2015 contract if P had been allowed to perform under it.

Argued May 10—officially released October 11, 2022

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the matter was tried to the court, *Arnold, J.*; judgment for the defendants; thereafter, the court, *Arnold, J.*, granted the plaintiff's motion to open and vacate the judgment; subsequently, the matter was withdrawn as to the defendant Tyreke Bird et al.; thereafter, the matter was tried to the court, *Jacobs, J.*; judgment for the plaintiff; subsequently, the court, *Jacobs, J.*, denied in part the named defendant's motion for reargument, and the named defendant appealed to this court; thereafter, the court, *Jacobs, J.*, issued a memorandum of decision on the named defendant's motion for reargument, affirming its award of prejudgment interest, and the named defendant filed an amended appeal. *Affirmed*.

*Megan E. Bryson*, for the appellant (named defendant).

*Richard E. Hayber*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. In this breach of contract action, the named defendant, Success Village Apartments, Inc.,[1] appeals from the judgment of the trial court, rendered after a second court trial, in favor of the plaintiff, David Paniccia, the defendant's former employee. In 2018, following the first court trial of this matter, the court, *Arnold, J.*, rendered judgment for the defendant on the plaintiff's claims for breach of an employment contract, violations of General Statutes §§ 31-71b and 31-72,[2] and breach of the implied duty of good faith and fair dealing. Thereafter, however, Judge Arnold granted the plaintiff's motion to open and vacate the judgment because his judgment was rendered untimely pursuant to General Statutes § 51-183b, which requires that a trial court render a decision within 120 days after the completion of a civil trial.[3] After conducting a second court trial in 2019, the court, *Jacobs, J.*, rendered judgment for the plaintiff and awarded him $172,969.90 in damages, which included $11,672.46 in prejudgment interest on back wages.

On appeal, the defendant claims that Judge Arnold improperly granted the plaintiff's motion to open and vacate the 2018 judgment for the defendant. In the alternative, the defendant claims that Judge Jacobs improperly (1) relied on parol evidence rather than the employment contract in finding that the contract was valid and enforceable and (2) awarded the plaintiff prejudgment interest pursuant to General Statutes § 37-3a. We affirm the judgment of the trial court.

The following facts, as found by Judge Jacobs or that are otherwise undisputed in the record, and procedural history are relevant to the defendant's claims. The defendant is a nonprofit residential community association registered with the state of Connecticut. In January, 2012, pursuant to a written employment contract, the defendant, through its board of directors (board), hired the plaintiff as its property manager for a term of two years, beginning on January 25, 2012 (2012 contract). Under the 2012 contract, the plaintiff earned a yearly salary of $85,000 and received health and dental insurance. The contract included a termination provision, which provided: "Employee shall receive sixty ([6]0) days advance written notice of the Employer's decision to terminate. Prior to termination, Employee shall receive a written complaint detailing the issue(s) needing attention or correction and will be given a ninety (90) day period to cure, resolve and/or correct such listed issue(s)." In October, 2013, the board executed an option to renew the 2012 contract for an additional term of two years, beginning on January 25, 2014 (2013 renewal).

On October 13, 2015, the board approved and executed a new employment contract with the plaintiff,

pursuant to which the plaintiff was hired as the defendant's community association manager for a term of two years, beginning on January 25, 2016 (2015 contract). Although the contract was dated October 12, 2015, the court found, on the basis of testimony from members of the board, that the board approved the contract on October 13, 2015, at a special meeting. The 2015 contract provided that the plaintiff would earn a yearly salary of $90,000 with various benefits, including health, dental, and disability insurance.

On December 30, 2015, the defendant notified the plaintiff that his employment would be terminated as of January 25, 2016. In May, 2016, the plaintiff commenced the underlying action against the defendant.[4] In the operative three count amended complaint dated July 13, 2017, the plaintiff alleged that the defendant, by preventing him from performing under the 2015 contract and by failing to pay him pursuant to the terms of the 2015 contract, (1) breached the 2015 contract, (2) violated §§ 31-71b and 31-72, which require that an employer pay an employee's wages weekly and provide for penalty damages in a civil action brought to recover such wages, and (3) breached the implied covenant of good faith and fair dealing. In his prayer for relief, the plaintiff sought "back pay, front pay, and the value of benefits," interest, and costs, as well as penalty damages and attorney's fees pursuant to § 31-72.

The defendant denied the material allegations in the complaint and alleged the following seven special defenses: (1) The plaintiff obtained the 2012 contract by fraud; (2) the plaintiff's employment contracts are invalid and/or unenforceable pursuant to statute; (3) the 2013 renewal is invalid and unenforceable because the 2012 contract was obtained by fraud; (4) the board's approval of the 2015 contract was invalid; (5) the plaintiff's termination was as of right under the employment contracts; (6) the plaintiff was paid for his services through the end of the 2013 renewal, inclusive of benefits; and (7) the plaintiff failed to mitigate his damages.[5]

As previously stated, the case initially was tried to Judge Arnold. The trial began on July 25, 2017, and was completed on September 25, 2017, when Judge Arnold received the parties' posttrial briefs.[6] On January 16, 2018, the parties filed a joint stipulation providing that they "agree that Judge Arnold will have until March 14, 2018, to issue a ruling." Judge Arnold issued his memorandum of decision on April 16, 2018, rendering judgment for the defendant on all counts of the complaint. Judge Arnold found that the board approved and signed the 2015 contract during an executive session on October 12, 2015, in violation of General Statutes § 47-250 (b) (1), which provides in relevant part: "No final vote or action may be taken during an executive session. . . ." Accordingly, Judge Arnold held that the 2015 contract was void and unenforceable.

On April 26, 2018, the plaintiff moved to open and vacate the judgment and for a new trial, claiming that the court's decision was untimely under § 51-183b. On October 3, 2018, Judge Arnold granted the motion over the defendant's objection, and Judge Jacobs held a new trial over the course of three days in December, 2019.

The parties submitted posttrial briefs in January, 2020, and Judge Jacobs issued a memorandum of decision on June 16, 2020, rendering judgment for the plaintiff on all counts of his complaint. Although the court found that the defendant had proven its sixth special defense regarding payment of the plaintiff's full salary and benefits under the 2013 renewal, it rejected the defendant's remaining special defenses. Contrary to Judge Arnold's conclusion regarding the 2015 contract, the court found that the 2015 contract was valid and enforceable. The court found that the defendant breached the 2015 contract by preventing the plaintiff from performing under the contract and by failing to pay him pursuant to the contract. The court also found that the defendant's failure to pay the plaintiff his salary violated § 31-71b and that the plaintiff was entitled to penalty damages on the unpaid wages pursuant to § 31-72 because the defendant neither pleaded nor presented evidence in support of the good faith exception under the statute.[7] See General Statutes § 31-72 (2) (plaintiff not entitled to twice full amount of unpaid wages "if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law"). The court awarded the plaintiff $172,969.90 in damages, which included: $69,176.85 for back wages; $11,672.46 in interest on back wages at a rate of 5 percent;[8] $69,176.85 as penalty damages under § 31-72; and $22,981.63 for the value of lost health insurance.

On July 6, 2020, the defendant filed a motion to reargue and a supporting memorandum of law, claiming that the court improperly: (1) relied on witness testimony to alter the execution date of the 2015 contract in violation of the parol evidence rule; (2) determined that the plaintiff's failure to obtain a certificate for "association management services" while providing "community association manager" services, as required under General Statutes (Rev. to 2011) § 20-457,[9] did not render the 2012 contract and 2013 renewal unenforceable under General Statutes (Rev. to 2011) § 20-458;[10] and (3) awarded prejudgment interest "without any basis in law." The plaintiff filed a memorandum of law in opposition to the defendant's motion on July 9, 2020, arguing that the issues raised by the defendant were not proper for reargument. On July 17, 2020, the defendant filed a reply memorandum, and Judge Jacobs heard oral argument on the motion on September 8, 2020.

On September 24, 2020, the court issued a memorandum of decision denying the motion as to the defen-

dant's first two claims but granting reargument as to the defendant's claim that the court improperly awarded prejudgment interest without statutory citation. Judge Jacobs noted that "[r]eargument shall be scheduled by the court clerk." On October 13, 2020, the defendant filed the present appeal.

On November 27, 2020, the defendant filed a motion for articulation, requesting that Judge Jacobs articulate her factual findings and legal conclusions regarding the applicability of the parol evidence rule with respect to the execution of the 2015 contract. Judge Jacobs denied the motion for articulation on January 19, 2021, and the defendant filed a motion for review of that ruling. On March 17, 2021, this court granted review but denied the relief requested.

On December 21, 2021, this court marked over the scheduled argument in the appeal and ordered, sua sponte, the parties to file memoranda on or before January 13, 2022, limited to two issues: "(1) [Whether] the rationale of *Gardner* v. *Falvey*, 45 Conn. App. 699, [697 A.2d 711] (1997), requires dismissal of this appeal for lack of a final judgment because the trial court granted reargument, but the motion to reargue had not been decided at the time the appeal was filed [and] (2) [i]f *Gardner* controls, [whether] this court [should] consider the case en banc and overrule *Gardner*."

On February 17, 2022, after the parties filed their memoranda, this court ordered, sua sponte, Judge Jacobs to "fully resolve the merits of the defendant's July 6, 2020 motion to reargue in light of the court's September 25, 2020 order stating: 'As to the defendant's third claim of error, i.e., the court's awarding of interest without statutory citation, the defendant's request for reargument and for reconsideration is granted.' "

After hearing reargument on the award of interest on February 28, 2022, Judge Jacobs issued a memorandum of decision resolving the defendant's motion to reargue on March 2, 2022. The court declined to alter its award of interest, concluding that the defendant's failure to pay the plaintiff his wages as required under the 2015 contract constituted the wrongful detention of money after it became payable under § 37-3a. On March 15, 2022, the defendant amended this appeal to challenge the court's ruling affirming its award of prejudgment interest and sought permission to file a supplemental brief and appendix addressing that issue. On March 24, 2022, this court ordered that the parties may file supplemental briefs limited to the issue raised in the defendant's amended appeal.[11] Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the court improperly granted the plaintiff's motion to open and vacate judgment. The defendant argues that the court's finding that

the plaintiff did not waive the right to object to a late decision under § 51-183b was clearly erroneous. The plaintiff responds that he never waived his right to receive a ruling by March 14, 2018, or to object to an untimely decision. We agree with the plaintiff.

We begin with the applicable standard of review. Ordinarily, we review a trial court's ruling on a motion to open a judgment for an abuse of discretion. See *Acadia Ins. Co.* v. *O'Reilly*, 138 Conn. App. 413, 417, 53 A.3d 1026 (2012), cert. denied, 308 Conn. 904, 61 A.3d 1097 (2013). "In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) Id. In the present case, however, the defendant claims that the court improperly failed to find that the plaintiff waived his right to object to the late judgment. "Whether conduct constitutes a waiver is a question of fact. . . . Our review therefore is limited to whether the judgment is clearly erroneous or contrary to law." (Internal quotation marks omitted.) *Foote* v. *Commissioner of Correction*, 125 Conn. App. 296, 302, 8 A.3d 524 (2010). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Franklin Credit Management Corp.* v. *Nicholas*, 73 Conn. App. 830, 836, 812 A.2d 51 (2002), cert. denied, 262 Conn. 937, 815 A.2d 136 (2003).

The following legal principles regarding § 51-183b are relevant to the defendant's claim. "[I]n order to reduce delay and its attendant costs, [§ 51-183b] imposes time limits on the power of a trial judge to render judgment in a civil case." *Waterman* v. *United Caribbean, Inc.*, 215 Conn. 688, 691, 577 A.2d 1047 (1990). A late judgment in violation of § 51-183b "implicates the trial court's power to continue to exercise jurisdiction over the parties before it. . . . [Our Supreme Court has] characterized a late judgment as voidable rather than as void . . . and [has] permitted the lateness of a judgment to be waived by the conduct or the consent of the parties. . . . Thus, if both parties simultaneously expressly consent to a late judgment, either before the judgment is issued, or immediately thereafter, the judgment is valid and binding upon both parties, despite its lateness. Express consent, however, is not required. If a late judgment has been rendered and the parties fail to object seasonably, consent may be implied." (Citations omitted.) Id., 692.

Accordingly, "an unwarranted delay in the issuance of a judgment does not automatically deprive a court of personal jurisdiction. Even after the expiration of the time period within which a judge has the power to

render a valid, binding judgment, a court continues to have jurisdiction over the parties until and unless they object. It is for this reason that a late judgment is merely voidable, and not void. It is for this reason as well that the issues arising under § 51-183b have focused on the question of waiver." Id., 692–93.

This court has distilled these principles into the following syllogism: "(1) a late judgment is voidable, not void, (2) a court maintains personal jurisdiction over the parties *until* and unless they object, (3) but a late judgment may be waived by conduct or consent, (4) therefore, absent waiver, a voidable judgment becomes void upon objection." (Emphasis in original.) *Foote* v. *Commissioner of Correction*, supra, 125 Conn. App. 301.

In the present case, the 120 day deadline under § 51-183b, as extended by the parties' joint stipulation, required that Judge Arnold render a decision by March 14, 2018. When Judge Arnold issued his decision on April 16, 2018, the plaintiff objected to the court's untimely decision by filing a motion to open and vacate the judgment ten days later on April 26, 2018. Accordingly, the dispositive issue is whether the plaintiff waived his right to object to the untimely decision by entering into the joint stipulation and then failing to object to a late decision between March 14 and April 16, 2018.

"Waiver is the intentional relinquishment of a known right. . . . Intention to relinquish [must] appear, but acts and conduct inconsistent with intention [to assert a right] are sufficient. . . . Thus, [w]aiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so. . . .

"[A] waiver is not ordinarily to be inferred from the mere inaction of a party prior to the time the judge files with the clerk his memorandum of decision. . . . Implications from silence or inaction . . . import some duty or occasion to speak or act, and in order to imply consent that rendition of judgment . . . might be deferred beyond the limit of time imposed by statute, there must be found to exist some obligation on the part of the [parties] or their counsel either seasonably to admonish the trial judge that the statute must be complied with or, after the [time limit imposed by statute] and before judgment, to interpose objection to its entry thereafter. We find no justification for so far extending the duty of a party or his counsel. The impracticability, if not the impropriety, of the first course is obvious; as to the second, it seems that *the most that can reasonably be required is objection seasonably made after the filing of the decision.* . . . Therefore, [u]nless some situation develops which in reason requires the party to protest and he does not protest,

or unless he consents to the delay either expressly or impliedly, as by agreeing to an additional hearing or by a tardy filing of his brief, no waiver will be spelled out. . . .

"[In cases in which waiver has been found], waiver was not based on silence per se but on some other act or conduct that either delayed the start of the 120 day deadline, created a duty to protest in the silent party or served as an affirmative act of waiver or consent. See, e.g., *O.J. Mann Electric Services, Inc.* v. *Village at Kensington Place Ltd. Partnership*, 99 Conn. App. 367, 374–75, 913 A.2d 1107 (2007) (plaintiff failed to object to court issued letter giving alleged erroneous 120 day deadline and plaintiff thereafter submitted brief beyond 120 day deadline he had claimed); *Rowe* v. *Goulet*, 89 Conn. App. 836, 845–46, 875 A.2d 564 (2005) (after 120 days but prior to rendition of late judgment plaintiff participated in hearing on damages and failed to object seasonably after late judgment rendered); *Franklin Credit Management Corp.* v. *Nicholas*, [supra, 73 Conn. App. 836] (plaintiff failed to object to unsolicited trial brief submitted by defendant) . . . ; *Dichello* v. *Holgrath Corp.*, [49 Conn. App. 339, 351–52, 715 A.2d 765 (1998)] (after untimely judgment rendered, plaintiff filed motion to open judgment to submit additional evidence and thereafter failed to file seasonable objection to untimely decision); *Ippolito* v. *Ippolito*, 28 Conn. App. 745, 749, 612 A.2d 131 (start of 120 day deadline delayed by lack of objection to defendant's unsolicited brief), cert. denied, 224 Conn. 905, 615 A.2d 1047 (1992). . . .

"[T]hese observations are consistent with the clear intent of [§ 51-183b, which is] to place the onus on judges to decide cases in a timely fashion." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *Foote* v. *Commissioner of Correction*, supra, 125 Conn. App. 302–304.

In *Foote*, neither party objected before the habeas court issued its decision denying the habeas petition 200 days after the completion of the trial. Id., 299. Nine days after the judgment had been rendered, however, the petitioner filed a motion to set aside the judgment pursuant to § 51-183b. Id. The habeas court denied the motion, and the petitioner appealed. Id. On appeal, this court reversed the judgment of the habeas court, concluding that the court's implicit finding of waiver was clearly erroneous. Id., 305. This court explained: "Our careful review of the record reveals that the only evidence on which the habeas court made its implicit finding of waiver was the petitioner's silence. *Prior to rendition of judgment, however, the petitioner was under no duty to object.* After judgment was rendered, the petitioner was under a duty to protest, and he did so by seasonably filing his motion to set aside the judgment nine days later. Under such circumstances, we cannot

conclude that the petitioner's silence was the intentional relinquishment or abandonment of a known right or privilege, which is the cornerstone of a claim of waiver." (Emphasis added; internal quotation marks omitted.) Id., 306–307.

In the present case, Judge Arnold relied on this court's decision in *Foote* in finding that the plaintiff did not waive his right to object to the late decision. The court determined "that the mere silence of the plaintiff upon the expiration of the joint stipulated extension is not fatal to the plaintiff. The plaintiff filed his motion to open and vacate the judgment and motion for new trial ten days after the court filed its memorandum of decision on April 16, 2018, due to the trial court's health issues. The memorandum of decision was [filed] beyond the parties' agreed upon extension date of March 14, 2018."

On appeal, the defendant argues that the plaintiff impliedly waived the right to object to the late decision by remaining silent during the thirty-one days after the expiration of the agreed upon deadline but before the judgment was rendered. The defendant contends that *Foote* is distinguishable from the present case because the parties in *Foote* did not expressly waive the provisions of § 51-183b. According to the defendant, where the parties initially have agreed to waive § 51-183b's 120 day deadline, a party has a duty to protest prior to the rendition of judgment after the agreed upon extension date. The defendant suggests that "several cases have held the provisions of § 51-183b waived [when the] parties have provided waivers of the statute, even if limited in duration, and thereafter failed to challenge a court's failure to timely issue a decision . . . prior to the issuance of a memorandum of decision." (Emphasis omitted.) The defendant identifies three such cases, two of which are Superior Court cases decided before this court issued its opinion in *Foote*.

First, the defendant directs our attention to *Franklin Credit Management Corp.* v. *Nicholas*, supra, 73 Conn. App. 830. In that case, the trial was completed on February 20, 2001, when the parties filed simultaneous posttrial briefs. Id., 833. On April 11, 2001, the defendant filed an unsolicited supplemental brief, and the plaintiff did not object to the supplemental brief. Id. On July 12, 2001, the trial court rendered judgment for the defendant, and the plaintiff promptly filed a motion to set aside the judgment and for a mistrial on the ground that the court's decision was untimely under § 51-183. Id. The court denied the motion and later "articulated that it had utilized the unsolicited brief, at least, in determining when its decision was due." Id., 834.

On appeal, this court affirmed the judgment, explaining: "The facts of this case are controlled by *Ippolito* v. *Ippolito*, supra, 28 Conn. App. 748–50. Here, as in *Ippolito*, one of the parties submitted an unsolic-

ited brief subsequent to the time the court established for the submission of briefs after the close of evidence. In both cases, the opposing party did not object to the unsolicited brief or seek to strike the brief. Neither of the courts returned the briefs or asked the parties to agree to extend the time in which the decisions were to be rendered. In *Ippolito*, the failure of the opposing party to file an objection to the unsolicited brief constituted implied consent to extend the period of 120 days from the completion of evidence. . . .

"Here, we note that [the plaintiff] not only failed to object to the filing of the unsolicited brief, but also failed to object when the court had not rendered a decision 120 days after the simultaneous briefs were due, i.e., February 20, 2001. Rather, it appears that [the plaintiff] waited for the court's decision. When it received an unfavorable decision, [the plaintiff] filed a motion to set aside the judgment. By failing to raise a seasonable objection to the unsolicited brief or to the passage of 120 days from February 20, 2001, prior to the time the court rendered its judgment, [the plaintiff] by implication waived the time provision of § 51-183b." (Citation omitted; footnote omitted.) *Franklin Credit Management Corp.* v. *Nicholas*, supra, 73 Conn. App. 836–37.

Thus, in *Franklin Credit Management Corp.*, the finding of waiver was not based on the plaintiff's failure to object before the late judgment but, rather, on its failure to object to the filing of a supplemental brief, which delayed the start of the 120 day deadline. In the present case, aside from the plaintiff's prejudgment silence for thirty-one days after the agreed upon deadline had passed but before judgment was rendered, the defendant is unable to identify any act or conduct by the plaintiff that supports a finding of waiver. See *Foote* v. *Commissioner of Correction*, supra, 125 Conn. App. 303 (waiver is not based on silence alone "but on some other act or conduct that either delayed the start of the 120 day deadline, created a duty to protest in the silent party or served as an affirmative act of waiver or consent").

The defendant also relies on *D'Amico* v. *Board of Alderman*, Superior Court, judicial district of Waterbury, Docket No. CV-98-0144154 (October 16, 2003) (35 Conn. L. Rptr. 627), and *McGlinchey* v. *Stonington*, Superior Court, judicial district of New London, Docket No. CV-04-0568887-S (June 19, 2006) (41 Conn. L. Rptr. 691). In *D'Amico*, the parties agreed to an extension of the 120 day deadline, providing an additional ninety days from March 20, 2002, for the court to render a decision. *D'Amico* v. *Board of Alderman*, supra, 627 n.1. The court, however, did not issue its decision until July 17, 2003, 394 days after the ninety day extension had passed. Id., 627. On August 21, 2003, the defendant moved to open and set aside the judgment as untimely

under § 51-183b. Id. The court denied the motion to set aside, concluding that "[a] 'seasonable objection' under the circumstances of this case would have been one made after the additional [ninety] days had passed without a decision, and *before* the court rendered its decision. An objection raised, for the first time, by the party against whom the judgment entered, *after* that party has the benefit of knowing the decision, is unseasonable, and the court is not required to vacate or set aside the judgment as untimely under [§ 51-183b]." (Emphasis in original.) Id.

In *McGlinchey* v. *Stonington*, supra, 41 Conn. L. Rptr. 691, the plaintiffs initially provided a "blanket waiver" of the 120 day time limit, but one of the defendants consented to only a 30 day extension until December 26, 2005. On December 21, 2005, the court requested an additional extension of time until February 1, 2006, to issue its decision, and the plaintiffs again agreed to waive the 120 day deadline. Id. On March 30, 2006, the court notified the parties that it was ready to issue its decision and requested a waiver of the 120 day deadline until April 10, 2006. Id. The defendants consented to the request, but the plaintiffs did not respond. Id. On April 13, 2006, during a conference call between the court and the parties, the plaintiffs' counsel informed the court that he was not able to agree to any further waiver of the deadline. Id. On April 17, 2006, one of the defendants sent a letter to the court discussing the law regarding waivers and urging the court to issue its decision. Id. The court issued its decision on April 19, 2006, and the plaintiffs sent a letter to the court on April 20, 2006, responding to the defendant's April 17 letter and objecting to the issuance of a decision. Id. On April 28, 2006, the plaintiffs moved to set aside the judgment as untimely under § 51-183b. Id.

The court denied the motion. Id., 693. The court first held that the plaintiffs had "provided the court with an unconditional waiver [of the 120 day deadline]. . . . Therefore, the plaintiffs' initial expressed waiver stands and cannot now be revoked." (Citation omitted; internal quotation marks omitted.) Id., 692. Having determined that the plaintiffs had expressly waived the provisions of § 51-183b, the court further "determined that the plaintiffs consented impliedly to the waiver of the 120 day time limit because the plaintiffs did not object to the passage of the February 1, 2006 time limit." Id. The court relied on *Franklin Credit Management Corp.* v. *Nicholas*, supra, 73 Conn. App. 836–37, and *D'Amico* v. *Board of Alderman*, supra, 35 Conn. L. Rptr. 627–28, in reasoning that "the plaintiffs failed to take timely and appropriate advantage of the two and a half months from February 1, 2006, to April 20, 2006. The plaintiffs' inaction is deemed an implied waiver of their rights to the provisions of § 51-183b." *McGlinchey* v. *Stonington*, supra, 41 Conn. L. Rptr. 693.

Notably, both *D'Amico* and *McGlinchey*, neither of which is binding on this court, were decided before this court issued its decision in *Foote* v. *Commissioner of Correction*, supra, 125 Conn. App. 296, in which this court rejected the reasoning employed by the trial courts in each case. In *Foote*, this court noted that "it has been stated that consent to a late judgment may be implied . . . *from the silence of the parties until the judgment has been rendered* . . . . On several occasions, however, our Supreme Court has clarified that silence may be implied consent only when the silent party is faced with a duty to speak or to protest." (Citations omitted; emphasis in original.) Id., 303 n.7.

Here, the defendant claims that the plaintiff had a duty to speak or to protest during the thirty-one days after the parties' deadline had passed but before judgment was rendered and, therefore, the plaintiff's prejudgment silence alone constituted implied consent to a late judgment. The defendant's attempt to draw a distinction between a party's silence after the statutory 120 day deadline has passed and a party's silence after an agreed upon extension of the deadline has passed is unpersuasive. The same considerations apply in either situation, and we reiterate that prejudgment silence alone is not sufficient to support a finding of waiver under § 51-183b. There must be "some other act or conduct that either delayed the start of the 120 day deadline, created a duty to protest in the silent party or served as an affirmative act of waiver or consent." Id., 303.

In sum, because the plaintiff in the present case was under no duty to speak or protest after the court failed to issue a decision by the agreed upon deadline, the court's finding that the plaintiff did not waive his right to object to the untimely decision was not clearly erroneous. Accordingly, the court properly granted the motion to open and vacate the judgment.

II

The defendant next claims that the court, *Jacobs, J.*, violated the parol evidence rule by relying on the testimony of witnesses rather than the written contract in finding that the 2015 contract was executed on October 13, 2015. The defendant argues that the 2015 contract is fully integrated and, therefore, that the court improperly relied on parol evidence to contradict its terms. The plaintiff responds that the date on which the 2015 contract was executed is not a term of the contract subject to the parol evidence rule. We agree with the plaintiff.

We begin with the applicable standard of review. "Because the parol evidence rule is not an exclusionary rule of evidence . . . but a rule of substantive contract law . . . the [defendant's] claim involves a question of law to which we afford plenary review." (Internal

quotation marks omitted.) *Medical Device Solutions, LLC* v. *Aferzon*, 207 Conn. App. 707, 728, 264 A.3d 130, cert. denied, 340 Conn. 911, 264 A.3d 94 (2021).

The following legal principles govern our resolution of the defendant's claim. "[I]t is well established that the parol evidence rule is . . . a substantive rule of contract law that bars the use of extrinsic evidence to vary the terms of an otherwise plain and unambiguous contract. . . . The rule does not prohibit the use of extrinsic evidence for other purposes, however, such as to prove mistake, fraud or misrepresentation in the inducement of the contract. . . .

"The rule also does not prevent a party from using extrinsic evidence to establish the existence of a condition precedent to the formation of a contract. . . . As [our Supreme Court] explained long ago, [t]he rule . . . is, that [one] may show that a writing purporting to be a contract never came into existence as a contract, or has ceased to be a contract, and [this] may [be] show[n] . . . by evidence outside of the writing. This . . . rule is not an exception to the [parol evidence rule or] an infringement of it. . . . The practical distinction between the two rules . . . is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show that there is not an agreement at all is admissible." (Citations omitted; internal quotation marks omitted.) *Zhou* v. *Zhang*, 334 Conn. 601, 620–22, 223 A.3d 775 (2020).

In the present case, the defendant claimed in its pretrial memorandum that "despite the plaintiff's efforts to establish that the 2015 contract was executed by the then board of directors on October 13, 2015, the evidence will bear out that same was executed on October 12, 2015, during an executive session of the board of directors, in violation of . . . § 47-250 (b) (1), which statute prohibits the taking of a final vote or action during an executive session." Given that a party may use extrinsic evidence to prove that a purported contract "never came into existence"; (internal quotation marks omitted) *Zhou* v. *Zhang*, supra, 334 Conn. 621; it follows that a party may do so to prove that a contract, in fact, exists. See id.

The defendant relies on our Supreme Court's decision in *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, 269 Conn. 599, 612–13, 849 A.2d 804 (2004), in which the court concluded that the trial court properly determined that extrinsic evidence was inadmissible to vary the *effective date* of the parties' agreement. In the present case, however, the effective date of the 2015 contract is not varied or contradicted by the court's finding that it was executed on October 13, 2015.

Moreover, because the date on which the contract was approved and executed is not a negotiated term of the contract, the evidence admitted in the present

case was not used to vary or contradict any terms of the contract. Consequently, the court properly considered parol evidence in determining whether the 2015 contract was valid and enforceable.[12] See *Zhou* v. *Zhang*, supra, 334 Conn. 622.

## III

Finally, the defendant claims that the court improperly awarded prejudgment interest under § 37-3a on the plaintiff's award for back pay because § 37-3a does not apply in the present case.[13] We disagree.

We begin with the applicable standard of review. "The decision of whether to grant interest under § 37-3a is primarily an equitable determination and a matter lying within the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . To the extent that the defendant is challenging the applicability of § 37-3a under the circumstances, however, our review is plenary." (Citation omitted; internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 99–100, 952 A.2d 1 (2008).

The following additional facts are relevant to the defendant's claim. On March 2, 2022, after allowing reargument on its award of prejudgment interest under § 37-3a, the court issued a memorandum of decision declining to alter its award. The court concluded that the defendant's failure to pay the plaintiff's wages under the 2015 contract constituted the wrongful detention of money after it became payable and, therefore, that an award of prejudgment interest pursuant to § 37-3a was warranted under the circumstances. The court awarded the plaintiff $11,672.46 in interest on back wages at a rate of 5 percent. See footnote 8 of this opinion.

On appeal, the defendant argues that § 37-3a does not apply in the present case because the plaintiff's claim "is not that he performed duties for which he was never compensated, but rather that his contract was rescinded such that he was never able to perform his duties." The plaintiff argues that the court properly awarded prejudgment interest on his back wages because the defendant wrongfully withheld his wages after they became payable and because the amount due is a liquidated sum under the terms of the 2015 contract. We conclude that the court properly awarded prejudgment interest on the plaintiff's back wages under § 37-3a.

Section 37-3a provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ." "Although § 37-3a does not use the word 'wrongful' to describe a compensable detention of money

under the statute, [our Supreme Court] has long employed that term to describe such a detention. . . . [The] earliest cases interpreting § 37-3a reveal that the term 'wrongful' invariably was used interchangeably with 'unlawful' to describe the narrow category of claims for which prejudgment interest was allowed under the statute, namely, claims to recover money that remained unpaid after it was due and payable. . . . Consistent with this precedent, [our Supreme Court] . . . clarified that, under § 37-3a, proof of wrongfulness is not required 'above and beyond proof of the underlying legal claim.' . . . In other words, the wrongful detention standard of § 37-3a is satisfied by proof of the underlying legal claim, a requirement that is met once the plaintiff obtains a judgment in his favor on that claim. . . .

"In fact, an award of interest under § 37-3a . . . is discretionary with the trial court. Interest is awarded under [§ 37-3a] when the court determines that such an award is appropriate to compensate the plaintiff for the loss of the use of his or her money. 'Basically, the question is whether the interests of justice require the allowance of interest as damages for the loss of use of money.' " (Citations omitted; footnotes omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 310 Conn. 38, 50–54, 74 A.3d 1212 (2013).

"It is well established that [§] 37-3a provides a substantive right [to prejudgment interest] that applies only to certain claims. . . . As early as 1814, [our Supreme Court] stated that [prejudgment] interest [under § 37-3a should] be allowed only . . . where there is a written contract for the payment of money on a day certain, as on bills of exchange, and promissory notes; or where there has been *an express contract*; or where a contract can be presumed from the usage of trade, or course of dealings between the parties; or where it can be proved that the money has been used, and interest actually made. . . . Section 37-3a also authorizes prejudgment interest in cases involving tortious injury to property when the damages were capable of being ascertained on the date of the injury. . . . Prejudgment interest is permitted in such cases on the theory that [a] loss of property having a definite money value is practically the same as the loss of so much money; the loss of the use of the property is practically the same as the loss of the use (or interest) of so much money. . . . Thus, [§ 37-3a] does not allow prejudgment interest on claims that are not yet payable, such as awards for punitive damages . . . or on claims that do not involve the wrongful detention of money, such as personal injury claims . . . . Prejudgment interest is not permitted on such claims for the simple reason that, until a judgment is rendered, the person liable does not know what sum he owe[s], and therefore cannot be in default for not paying." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 49–50 n.11.

"Prejudgment interest pursuant to § 37-3a is appropriate only [if] the essence of the action itself involves the wrongful withholding of money due and payable to the plaintiff. The prejudgment interest statute does not apply when the essence of the action is the recovery of damages to compensate a plaintiff for injury, damage or costs incurred as a result of a defendant's negligence. It ordinarily does not apply to contract actions in which the plaintiff is not seeking the recovery of liquidated damages or the recovery of money advanced under a contract and wrongfully withheld after a breach of that contract. The prejudgment interest statute does not apply to such actions because they do not advance claims based on the wrongful withholding of money, but rather seek damages to compensate for losses incurred as a result of a defendant's negligence. Moreover, such damages are not considered due and payable until after a judgment in favor of the plaintiff has been rendered." *Tang* v. *Bou-Fakhreddine*, 75 Conn. App. 334, 349, 815 A.2d 1276 (2003).

Thus, a "court's determination [as to whether interest should be awarded under § 37-3a] should be made in view of the demands of justice rather than through the application of any arbitrary rule. . . . Whether interest may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances." (Internal quotation marks omitted.) *Sosin* v. *Sosin*, 300 Conn. 205, 229, 14 A.3d 307 (2011); see also *Ceci Bros., Inc.* v. *Five Twenty-One Corp.*, 81 Conn. App. 419, 427, 840 A.2d 578 ("Connecticut case law establishes that prejudgment interest is to be awarded if, in the discretion of the trier of fact, equitable considerations deem that it is warranted" (internal quotation marks omitted)), cert. denied, 268 Conn. 922, 846 A.2d 881 (2004).

In the present case, the plaintiff sought his salary pursuant to the 2015 contract. At its core, his claim is that the defendant unlawfully detained his wages after January 25, 2016, pursuant to the 2015 contract. Thus, the plaintiff sought to recover money that remained unpaid after it was due, and the court found that the defendant's breach of the 2015 contract, i.e., preventing the plaintiff from performing under the 2015 contract and refusing to pay the plaintiff's salary, constituted the wrongful detention of money under § 37-3a. See *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 310 Conn. 48 ("a wrongful detention of money, that is, a detention of money without the legal right to do so, is established merely by a favorable judgment on the underlying legal claim"). Under these circumstances, where there is no question that the failure to pay the plaintiff his wages deprived the plaintiff of the use of that money, it follows that interest may be awarded under § 37-3a "to compensate the plaintiff

for the loss of the use of his . . . money." Id., 54. Indeed, this is the primary purpose of the statute. See *Sosin* v. *Sosin*, supra, 300 Conn. 230 ("primary purpose of § 37-3a . . . is not to punish persons who have detained money owed to others in bad faith but, rather, to compensate parties that have been deprived of the use of their money"). Such compensation "reimburses plaintiffs for the interest they could have earned on the money that was rightfully theirs, but that was not paid when it became due." *Flynn* v. *Kaumeyer*, 67 Conn. App. 100, 105, 787 A.2d 37 (2001).

The defendant nevertheless claims that the damages awarded in the present case are akin to damages in a personal injury action. It argues that the plaintiff "seeks damages that will place him in the same position that he would have been in had the contract been performed, which such claims have previously been found not to set forth claims for liquidated damages satisfying the legal prerequisite for the imposition of prejudgment interest . . . ." (Internal quotation marks omitted.) In support of its argument, the defendant relies on *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 742, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996), for the proposition that prejudgment interest under § 37-3a is not warranted in an action for breach of contract when the damages "are similar to damages in a personal injury claim in negligence where a party is seeking to be made whole for the loss caused by another." Although we agree with this proposition, we are not persuaded by the defendant's argument and conclude that *Foley* is distinguishable from the present case.

In *Foley*, the plaintiff claimed that the defendant breached a contract for the sale of a nursing home facility. Id., 715–16. A jury returned a plaintiff's verdict, awarding him $938,000 on the breach of contract claim, but the trial court reserved for itself whether to award prejudgment interest on the breach of contract damages. Id., 720, 737. In finding that there was sufficient evidence to support the jury's award of $938,000, the trial court noted that the "plaintiff provided expert testimony that valued the property at $7 million as of the time for performance of the contract. The price fixed in the contract was $5.25 million. The difference between the two figures was the range for damages." Id., 722. The trial court determined that the plaintiff was not entitled to prejudgment interest under § 37-3a on the breach of contract damages. Id., 737.

On appeal, this court first determined that the trial court incorrectly concluded that whether to award interest under § 37-3a is a legal question for the court and held that "the determination of whether interest pursuant to § 37-3a should be awarded is a question for the trier of fact." Id., 738. The court then considered whether § 37-3a applied to the breach of contract dam-

ages, concluding that "[t]he damages for the breach of contract in this case are similar to damages in a personal injury claim in negligence where a party is seeking to be made whole for the loss caused by another. The damages claimed and awarded to the plaintiff were for the loss of the benefit of his bargain. In this case, neither party claimed to have performed fully or substantially under the contract so as to invoke the other's obligation to pay a liquidated sum or to provide services under the contract." Id., 742.

In the present case, the defendant breached the contract for the payment of wages by preventing the plaintiff from performing fully under the contract, and, unlike the damages awarded in *Foley*, the determination of which required expert testimony regarding the valuation of property, the damages awarded in the present case were ascertainable at the time of the defendant's breach pursuant to the terms of the 2015 contract.[14] Cf. *Whitney* v. *J.M. Scott Associates, Inc.*, 164 Conn. App. 420, 438–39, 137 A.3d 866 (2016) ("[T]he damages at issue . . . are not liquidated damages that fall within the scope of § 37-3a. These damages were uncertain at the time of the breach, and the defendants could not know the amount owed until the court determined them."). Further, although the defendant emphasizes that the plaintiff is not seeking liquidated damages under the contract and argues that, therefore, § 37-3a should not apply, much like liquidated damages, the award for unpaid wages here was determined by the terms of the contract governing the amount of the plaintiff's salary. See *Foley* v. *Huntington Co.*, supra, 42 Conn. App. 740 ("[p]rejudgment interest pursuant to § 37-3a has been applied to breach of contract claims for liquidated damages, namely, where a party claims that a specified sum under the terms of the contract, or a sum to be determined by the terms of the contract, owed to that party has been detained by another party"). Indeed, the court awarded interest on the plaintiff's weekly salary, as each payment would have become due under the terms of the 2015 contract if the plaintiff had been allowed to perform under the contract. See footnote 8 of this opinion. Accordingly, we are not persuaded that the damages sought in the present case are akin to damages in a personal injury action. Rather, we conclude that the primary purpose of the statute supports the court's award of interest on the plaintiff's unpaid wages.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also named as defendants eight individuals who served on the defendant's board of directors, but he withdrew the complaint as to those defendants before the second trial. All references herein to the defendant are to the named defendant.

[2] General Statutes (Rev. to 2015) § 31-71b (a) (1) provides in relevant part: "[E]ach employer . . . shall pay weekly all moneys due each employee on a regular pay day, designated in advance by the employer . . . ."

All references herein to § 31-71b are to the 2015 revision of the statute.

General Statutes § 31-72 provides in relevant part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i . . . such employee . . . shall recover, in a civil action, (1) twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, or (2) if the employer establishes that the employer had a good faith belief that the underpayment of wages was in compliance with law, the full amount of such wages or compensation, with costs and such reasonable attorney's fees as may be allowed by the court. . . ."

[3] General Statutes § 51-183b provides: "Any judge of the Superior Court and any judge trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

[4] On February 22, 2016, the plaintiff filed an application for prejudgment remedy and a proposed summons and complaint. After a hearing on April 27 and 28, 2016, the court, *Radcliffe, J.*, granted the plaintiff a prejudgment remedy in the amount of $62,500. See General Statutes § 52-278d (a) (1).

[5] The defendant also asserted an eighth special defense claiming that it was entitled to a setoff, but the defendant withdrew that special defense before trial.

[6] Our Supreme Court has construed "completion date" under § 51-183b as including the filing of posttrial briefs. See *Frank* v. *Streeter*, 192 Conn. 601, 605, 472 A.2d 1281 (1984) ("When litigation raises difficult questions of law, a trial court is well-advised to request briefs and to defer its written decision until such time as the court has had the opportunity to deliberate and to reach a thoughtful, reasoned conclusion. . . . Delay in the trial courts is not remedied by affording disappointed litigants automatic access to new trials whenever the just resolution of their cases requires time for study and reflection." (Citation omitted.)).

[7] On appeal, the defendant does not challenge the applicability of §§ 31-71b and 31-72 to the circumstances of the present case, in which the employee's claim for unpaid wages was not based on services he actually performed. See, e.g., *Assn. Resources, Inc.* v. *Wall*, 298 Conn. 145, 172, 2 A.3d 873 (2010) (defendant claimed that plaintiff's claim was for bonuses under employment agreement, not wages under General Statutes § 31-71a (3)). Because that issue has not been raised in the present case, we leave it for another day.

[8] Although the court did not explain how it calculated the prejudgment interest on the back wages, it appears that the court adopted the plaintiff's methodology for calculating prejudgment interest. Under the plaintiff's methodology, interest at a rate of 10 percent accrued on the plaintiff's weekly salary as it became due, beginning with the week ending January 29, 2016. As of the week ending August 5, 2016, interest accrued on the difference between the plaintiff's weekly salary under the 2015 contract and the amount he earned from his new job. In his posttrial brief, the plaintiff sought $23,344.93 in prejudgment interest at a rate of 10 percent per annum pursuant to § 37-3a, and the court awarded him one half of that amount, $11,672.46 at a rate of 5 percent per annum.

[9] General Statutes (Rev. to 2011) § 20-457 (b) provides: "No person shall: (1) Present or attempt to present, as his own, the certificate of another, (2) knowingly give false evidence of a material nature to the commission or department for the purpose of procuring a certificate, (3) represent himself falsely as, or impersonate, a registered community association manager, (4) use or attempt to use a certificate which has expired or which has been suspended or revoked, (5) offer to provide association management services without having a current certificate of registration under sections 20-450 to 20-462, inclusive, (6) represent in any manner that his registration constitutes an endorsement of the quality of his services or of his competency by the commission or department. In addition to any other remedy provided for in sections 20-450 to 20-462, inclusive, any person who violates any provision of this subsection shall be fined not more than five hundred dollars or imprisoned for not more than one year or be both fined and imprisoned. A violation of any of the provisions of sections 20-450 to 20-462, inclusive, shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b."

[10] General Statutes (Rev. to 2011) § 20-458 provides in relevant part: "(a) No contract between a person contracting to provide association management services and an association which provides for the management of the association shall be valid or enforceable unless the contract is in writing

and: (1) Provides that the person contracting to provide management services shall be registered as provided in sections 20-450 to 20-462, inclusive, and shall obtain a bond as provided in section 20-460 . . . ."

[11] We briefly address the jurisdictional issue raised by this court—whether the rationale of *Gardner* v. *Falvey*, supra, 45 Conn. App. 699, requires dismissal of the defendant's appeal for lack of a final judgment because the trial court granted reargument but had not heard reargument at the time the appeal was filed.

In *Gardner*, which involved an action for adjudication of paternity and visitation rights, the defendant mother appealed from an order of the trial court granting unsupervised visitation to the plaintiff, claiming that the trial court abused its discretion by denying her motion to appoint an attorney for the minor child. Id., 700. The day after the defendant appealed, she filed a motion for reargument as to her motion for appointment of counsel for the minor child. Id. The trial court granted the defendant's motion but never heard reargument. Id. This court concluded "that, because the trial court granted a motion for reargument filed by the defendant on [the sole] issue [raised by the defendant on appeal], but never heard the reargument, the appeal must be dismissed for lack of a final judgment." Id. This court further stated: "[Because] there was no disposition of the reargument, the controversy is not ripe for our review, and there is no final judgment." Id., 702. Since *Gardner* was decided, this court has cited the opinion for this finality principle only once. See *Lambert* v. *Donahue*, 69 Conn. App. 146, 149, 794 A.2d 547 (2002).

In the present case, because the trial court subsequently resolved the defendant's motion for reargument and because the defendant amended its appeal to challenge that ruling, the rationale of *Gardner* does not require the dismissal of the appeal. See Practice Book § 61-9 ("[i]f the original appeal is dismissed for lack of jurisdiction, any amended appeal shall remain pending if it was filed from a judgment or order from which an original appeal properly could have been filed"). Nevertheless, we note that *Gardner*'s finality principle—that a pending motion for reargument renders the underlying judgment nonfinal for purposes of appeal—has been overruled sub silentio by our Supreme Court in *RAL Management, LLC* v. *Valley View Associates*, 278 Conn. 672, 899 A.2d 586 (2006).

In *RAL Management, LLC*, the court noted that "a trial court properly may open a judgment while an appeal is pending, even to address the issue raised on appeal"; id., 682; and that, "[w]hen a timely appeal has been filed before a motion to open has been filed, however, there is an effective, final judgment at the time of the appeal, and thus [an appellate] court has jurisdiction to consider the appeal." Id., 686. Thus, the court explained, "[b]ecause we may suspend the exercise of our jurisdiction while a trial court resolves a matter necessary to the proper resolution of the appeal, the granting of a motion to open while the appeal is pending does not divest us of jurisdiction to consider the appeal upon the resolution of that motion." Id., 687. Although *RAL Management, LLC*, involved a motion to open, the same principles apply to a motion to reargue.

In fact, these principles arguably apply with even greater force to a motion to reargue because, unlike the granting of a motion to open, the granting of a motion to reargue a judgment does not alter the judgment. See, e.g., *Governors Grove Condominium Assn., Inc.* v. *Hill Development Corp.*, 187 Conn. 509, 510 n.2, 446 A.2d 1082 (1982) ("[t]he fact that the trial court has the power to open a judgment . . . does not mean that the judgment is not final for purposes of appeal" (citations omitted)), overruled on other grounds by *Morelli* v. *Manpower, Inc.*, 226 Conn. 831, 628 A.2d 1311 (1993). Indeed, Practice Book § 11-12 (c) provides in relevant part that, "[i]f the judge grants the motion [to reargue], the judge shall schedule the matter for hearing on the relief requested." Practice Book § 11-12 (c). Of course, a court is not required to hold a hearing upon granting a motion to reargue a decision that is a final judgment because such motions are governed by Practice Book § 11-11. See *Disturco* v. *Gates in New Canaan, LLC*, 204 Conn. App. 526, 536, 253 A.3d 1033 (2021) ("provisions of Practice Book § 11-11 do not require the court to schedule a hearing upon granting a movant's motion to reargue"). Nevertheless, after granting reargument, a court still must determine whether to grant the relief sought, i.e., to alter the judgment. In other words, although the granting of reargument establishes that the judgment *may* change, the judgment is neither vacated nor modified unless the court grants additional relief upon reargument. For this reason, a court's decision to allow reargument does not affect the finality of the judgment.

[12] On appeal, the defendant also claims that the court improperly found

that the 2012 contract and the 2013 renewal were enforceable despite the fact that neither contract complied with General Statutes (Rev. to 2011) § 20-458. The defendant argues that this court "should hold, because *the 2012 contract* and *the 2013 renewal* were invalid as a matter of statute under General Statutes (Rev. to 2011) § 20-458, that the defendant was not bound by any of the terms therein, including the termination provisions, and therefore could not have breached [the] same as a matter of law, such that judgment should enter for the defendant on all counts of the plaintiff's complaint." (Emphasis added.)

For his part, the plaintiff notes that the court found that the defendant breached *the 2015 contract* and that the defendant "never argues . . . that the 2015 contract was affected somehow by the alleged invalidity of the 2012 or 2013 contracts, nor does it explain why invalidation of the 2012 or 2013 contracts would result in invalidation of the 2015 contract." In its reply brief, the defendant explained that, because the 2012 contract and the 2013 renewal were invalid pursuant to General Statutes (Rev. to 2011) § 20-458 and "because [the] 2015 contract was void ab initio as entered into in violation of . . . § 47-250 (b) (1) and unenforceable . . . as a matter of law," judgment should enter for the defendant on all counts of the complaint.

Because the court found that the defendant breached *the 2015 contract*, which was the sole basis for all counts of the plaintiff's complaint, whether the 2012 contract and 2013 renewal were invalid is simply irrelevant to the judgment on appeal. See *In re Jaccari J.*, 153 Conn. App. 599, 609, 101 A.3d 961 (2014) ("Errors of law constitute no ground of reversal if they are immaterial or such as have not injuriously affected the appellant. . . . It is axiomatic that to require reversal, error must be harmful." (Citation omitted; internal quotation marks omitted.)). Consequently, because the court's judgment does not depend on the validity of the 2012 contract or the 2013 renewal and because the defendant fails to demonstrate how the court's finding as to those contracts was harmful, we decline to consider the merits of this claim.

[13] The defendant does not challenge the court's calculation of prejudgment interest; see footnote 8 of this opinion; but rather the court's authority to award prejudgment interest in any amount under § 37-3a.

[14] Although we recognize that the damages awarded in the present case were reduced because the plaintiff mitigated his damages by finding a new job in July, 2016, at the time that the defendant breached the 2015 contract, the amount of the plaintiff's salary was fixed by the terms of that contract. We are not persuaded that the plaintiff should lose his entitlement to prejudgment interest simply because he took steps that reduced the defendant's liability to him for breach of the 2015 contract. Moreover, the manner in which the court calculated the prejudgment interest results in the defendant only paying interest on funds that the plaintiff did not have available to him when they should have been paid by the defendant.

———————————————